**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MATTHEW STRICKLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:26-cv-02444** |
| | ) | |
| **TECHINT SOLUTIONS GROUP, LLC, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**NOBLIS, INC.'S MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant Noblis, Inc., by counsel, hereby moves to dismiss the claims asserted against it in the Complaint because Plaintiff has failed to state a claim against Noblis. The grounds for this motion are set forth in the accompanying Memorandum of Support. Pursuant to Local Rule 7(f), Noblis requests an oral hearing for this motion.

Dated: October 5, 2026

Respectfully submitted,

/s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
Edward Lee Isler, DC Bar No. 417076
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Noblis, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will serve a copy on all counsel of record.

/s/ Micah E. Ticatch

Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Noblis, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MATTHEW STRICKLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:26-cv-02444** |
| | ) | |
| **TECHINT SOLUTIONS** | ) | |
| **GROUP, LLC, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**NOBLIS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Micah E. Ticatch, DC Bar No. 1005398
Edward Lee Isler, DC Bar No. 417076
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Noblis, Inc.*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

BACKGROUND ........ 1

ARGUMENT ........ 2

I. Plaintiff Has Not Stated a Claim Under Section 4712 Against Noblis........ 2

A. Plaintiff has not adequately pled that Noblis was his employer. ........ 2

B. Plaintiff has not pled a protected disclosure. ........ 3

1. Comments made to the Hurricane Helene Report were not a protected disclosure. ........ 5

2. Forwarding news reports of drone sightings was not a protected disclosure. ........ 6

3. The questioning of the distribution of the "Fentanyl Memorandum" was not a protected disclosure. ........ 6

4. The social media post objecting to the termination of Mr. Hamilton was not a protected disclosure. ........ 7

C. Plaintiff has not pled that Noblis made any actionable decision, or that any such decision is casually connected to any protected disclosure. ........ 8

D. Noblis is not vicariously liable for the conduct of the Federal Government. ........ 9

II. Plaintiff Has Failed to State a Claim Against Noblis Under the False Claims Act. ........ 9

A. Plaintiff has not pled protected activity under the FCA. ........ 10

B. Plaintiff has not adequately pled retaliation by Noblis. ........ 11

III. Plaintiff Has Failed to State a Claim for Tortious Interference Against Noblis. ........ 12

IV. Count V Does Not State a Claim. ........ 13

CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Cases**

*Abdelhamid v. Lane Constr. Corp.*,
744 F. Supp. 3d 10 (D.D.C. 2024) .................... 10

*Angeline v. ATCS, PLLC*,
813 F. Supp. 3d 112 (D.D.C. 2025) .................... 2, 3, 8

*Arawole v. Master Sec. Co., LLC*,
2025 WL 947477 (D.D.C. 2025) .................... 2, 4

*Armstrong v. The Arcanum Grp., Inc.*,
897 F.3d 1283 (10th Cir. 2018) .................... 8, 9

*Craine v. Nat'l Sci. Found.*,
687 F. App'x 682 (10th Cir. 2017) .................... 7

*Delebreau v. Danforth*,
743 F. App'x 43 (7th Cir. 2018) .................... 3

*Evans v. Individual Advoc. Grp., Inc.*,
2025 WL 2651242 (D.D.C. 2025) .................... 12

*Fuerst v. Hous. Auth. of City of Atlanta, Georgia*,
38 F.4th 860 (11th Cir. 2022) .................... 4

*Kruml v. Booz Allen Hamilton, Inc.*,
2025 WL 36977 (Va. Ct. App. 2025) .................... 12, 13

*Lewis-Gale Med. Ctr., LLC v. Alldredge*,
282 Va. 141 (2011) .................... 12

*McCane v. Sch. Dist. of Pasco Cnty.*,
2020 WL 495219 (M.D. Fla. 2020) .................... 5

*Sargent v. Pompeo*,
2020 WL 5505361 (D.D.C. 2020) .................... 4

*Thornton v. Nat'l Acad. of Scis.*,
2025 WL 3123732 (D.D.C. 2025) .................... 9

*United States ex rel. Toledo v. HCA Holdings, Inc.*,
2023 WL 2823899 (5th Cir. 2023) .................... 8

*United States v. Novo Nordisk Inc.*,
2026 WL 880085 (D.D.C. 2026) ........................................................................................ 10

*Wonneman v. Global Grab Technologies Inc.*,
2026 WL 2884156 (D.D.C. 2026) ........................................................................................ 3

**Statutes**

31 U.S.C. § 3730(h)(1) ........................................................................................ 10

41 U.S.C. § 4712........................................................................................ passim

In his Complaint (Dkt. 1), Plaintiff Matthew Strickland alleges four counts against Defendant Noblis, Inc. ("Noblis"): whistleblower retaliation under 41 U.S.C. § 4712 ("Section 4712") (Count I); False Claims Act retaliation (Count II); tortious interference with contractual and business relations (Count IV); and "declaratory and injunctive relief" (Count V). As explained below, Plaintiff has not properly stated any of these claims. Consequently, Noblis should be dismissed from this case with prejudice.

## BACKGROUND[1]

Noblis is a prime contractor on a Federal contract with the Department of Homeland Security (which Plaintiff refers to as the CWMD contract). (*See* Compl. ¶ 4.) Noblis has a subcontract arrangement on the CWMD contract with Defendant TechINT. (*Id.*) In March 2024, Plaintiff was employed by TechINT to work on the CWMD contract, assisting DHS. (*Id.* ¶ 14.)

In May 2025, policy disputes arose within DHS on how to spend certain FEMA disaster-relief funds between DHS Secretary Kristi Noem and her Senior Advisor Corey Lewandowski, on the one hand, and Acting FEMA Director Cameron Hamilton, on the other. (*See id.* ¶¶ 24-25.) On May 8, 2025, the disputes led to the termination of Mr. Hamilton's employment as Acting FEMA Director. (*See id.*)

Following that termination, Plaintiff posted on the social media site X (formerly known as Twitter). (*Id.* ¶ 26.) "The post described a pattern Mr. Strickland had observed: that a temporary senior advisor was effectively directing DHS without formal authority; that the Acting FEMA Director had been fired for refusing to redirect federal disaster funds; and that DHS was prioritizing political directives over mission." (*Id.*)

---

[1] In light of the standard on a motion to dismiss, this section presents the facts as alleged in the Complaint. Noblis disputes the accuracy of many of those allegations.

According to Plaintiff, political staffers who worked for Secretary Noem were upset by Plaintiff's posting on X. (*See id.* ¶ 33.) Mr. Lewandowski contacted DHS leadership and demanded that Plaintiff "be fired." (*Id.* ¶ 35.) On May 15, 2025, DHS communicated to Noblis that Plaintiff was banned from DHS property and was no longer allowed to report to work. (*See id.* ¶ 34.) Noblis communicated the ban to TechINT, which communicated it to Plaintiff. (*See id.*) Presumably because he could no longer perform his job with the ban in place, Plaintiff's employment with TechINT was terminated shortly thereafter.

In his Complaint, Plaintiff attempts to hold Noblis liable for DHS' decision to ban him from their property and TechINT's decision to terminate his employment under convoluted theories arising under Section 4712, the False Claims Act, and Virginia common law. As explained below, Plaintiff has not stated a claim against Noblis, and cannot do so.

## <u>ARGUMENT</u>

### I. Plaintiff Has Not Stated a Claim Under Section 4712 Against Noblis.

To state a claim under Section 4712, a plaintiff needs to allege sufficient facts to plausibly establish: (i) the defendant was a contractor and the plaintiff's employer; (ii) the plaintiff engaged in a protected disclosure; (iii) the defendant "discharged, demoted, or otherwise discriminated against" the plaintiff; and (iv) the protected disclosure was a contributing factor in the defendant's decision to take the adverse action against the plaintiff. *See Arawole v. Master Sec. Co., LLC*, 2025 WL 947477, at *13 (D.D.C. 2025); *Angeline v. ATCS, PLLC*, 813 F. Supp. 3d 112, 121 (D.D.C. 2025). Plaintiff's Complaint fails to establish these elements.

#### A. Plaintiff has not adequately pled that Noblis was his employer.

As a threshold matter, in order to plead a claim under Section 4712, a plaintiff must adequately demonstrate the defendant was his employer. *See Angeline*, 813 F. Supp. 3d at 121;

*Delebreau v. Danforth*, 743 F. App'x 43, 44 (7th Cir. 2018). In this case, Plaintiff acknowledges that TechINT was his actual employer — not Noblis. (*See* Compl. ¶ 11.) To the extent Plaintiff was attempting to plead that Noblis is liable as a "joint employer," he has failed to do so. To begin with, it remains an open question whether Section 4712 liability can be extended to a constructive employer the way some other employment statutes have been interpreted. *See Angeline*, 813 F. Supp. 3d at 123-124. To the extent joint employment is a viable theory under statute, it almost certainly requires, at minimum, that the purported joint employer have exercised substantial control over the worker's performance. *See id.* at 124-125. Because Plaintiff has not pled any facts that would suggest such control, he has failed to establish Noblis was his employer under the statute even if joint employment was a viable theory.

**B. Plaintiff has not pled a protected disclosure.**

Under the statute a disclosure is only protected if the employee discloses information he reasonably believes is evidence of:

- gross mismanagement of a Federal contract;
- gross waste of Federal funds;
- an abuse of authority relating to a Federal contract;
- a substantial and specific danger to public health or safety; or
- a violation of law, rule, or regulation related to a Federal contract.

41 U.S.C. § 4712(a)(1).

To properly plead a claim, a plaintiff must allege sufficient facts to establish that his belief that the disclosed information fits into one of the five protected categories was objectively reasonable. *See, e.g., Wonneman v. Global Grab Technologies Inc.*, 2026 WL 2884156, at *7 (D.D.C. 2026).

Courts have narrowly construed the five categories subject to protection under the statute. For example, to establish the "abuse of authority" or "violation of law" categories, a plaintiff must show a substantial "nexus" between the alleged misconduct and the specific contract itself. *Sargent v. Pompeo*, 2020 WL 5505361, at *14 (D.D.C. 2020). Disclosures related to the alleged violation of laws that are generally applicable are not protected by Section 4712, even if they arise in the performance of the contract. *Id.* at *15. For example, in *Sargent* a report that Government employees conspired with contractor employees to sexually harass female employees on the contract was not protected under Section 4712 even though the alleged misconduct occurred on the contract because Title VII is generally applicable to all employers. *See id.* at *14-15.

Likewise, information regarding safety is not protected absent specific factual allegations demonstrating a *substantial and specific* danger to public health or safety. *Arawole*, 2025 WL 947477 at *14. Regarding the mismanagement and waste categories, courts have held that these categories protect only disclosures regarding "egregious conduct" such that the "violations [are] flagrant enough to obviate disagreement." *Fuerst v. Hous. Auth. of City of Atlanta, Georgia*, 38 F.4th 860, 873 (11th Cir. 2022).

In addition to the substance requirements, a disclosure is also only protected if it is made to one of the bodies or persons specified in the statute. 41 U.S.C. § 4712(a)(2). The list of disclosure recipients protected by the statute is:

- member of congress
- an inspector general
- the Government Accountability Office
- a "Federal employee responsible for contract or grant oversight or management at the relevant agency"
- a law enforcement agency

- a court, and
- a "management official or other employee of the contractor, subcontractor, grantee, subgrantee, or personal services contractor who has the responsibility to investigate, discover, or address misconduct."

*Id.*

Thus, in addition to other pleading requirements, to properly plead a claim a plaintiff must identify the specific person he allegedly made the disclosure to, and sufficient factual allegations to support the conclusion that the role the recipient inhabited meets the statutory requirements. *See McCane v. Sch. Dist. of Pasco Cnty.*, 2020 WL 495219, at *5 (M.D. Fla. 2020).

In his Complaint, Plaintiff identifies four alleged disclosures as the basis for his claim. As discussed below, none of these purported disclosures is protected by the statute.

1. <u>Comments made to the Hurricane Helene Report were not a protected disclosure.</u>

Plaintiff alleges that in October 2024, he was asked to comment on a report about Hurricane Helene that was drafted by a different subagency than Plaintiff was working with. (Compl. ¶¶ 14, 17.) Plaintiff identified "factual inaccuracies" in the draft report and "flagged" that a recommendation in the report "would implicate the First Amendment rights of American citizens" and provided his concerns to his "chain of command." (*Id.* ¶¶ 17-18.)

Plaintiff's identification of alleged factual inaccuracies in a draft Government report does not fit into any of the five statutory categories of protected disclosure. Likewise, any objections to potential First Amendment issues in the report's recommendation do not suggest the occurrence of a "violation of law" — only a potential future violation. Moreover, it is not the type of violation of law protected by the statute, as it relates only to general legal obligations, not to obligations related to the contract at issue. Consequently, it is not the type of disclosure that is protected.

Furthermore, Plaintiff fails to sufficiently plead who he disclosed this information to or what job duties this person had, which is insufficient to state a claim.

2. <u>Forwarding news reports of drone sightings was not a protected disclosure.</u>

Plaintiff alleges that in December 2024, he informed "IAD leadership" that there had been news reports of drone sightings on the east coast. (*Id.* ¶ 19.) First, the forwarding of news articles of what was a widely reported story is not a "disclosure" of information. Second, it is not reasonable to believe that information fits into any of the five categories of protected information. To the extent Plaintiff was concerned the drones presented a safety issue, it was an amorphous, hypothetical risk, not the type of "substantial and specific danger" the statute requires. Moreover, the drones had little or no connection to Noblis' contract. Additionally, Plaintiff, again, did not specifically allege who he reported this information to or what their roles were.

3. <u>The questioning of the distribution of the "Fentanyl Memorandum" was not a protected disclosure.</u>

Plaintiff alleges that during his employment he learned about a draft memorandum to the President that would have declared fentanyl as a "weapon of mass destruction." (*Id.* ¶ 20.) Plaintiff alleges that two members of the political administration, Senior Advisor Corey Lewandowski and DHS Deputy Secretary Troy Edgar "suppressed" the memorandum. (*Id.* ¶ 21.) As best as can be discerned, what Plaintiff means by "suppressed" is these individuals made the policy decision not to transmit the memorandum to the President. Plaintiff claims that at unidentified times he "questioned" this decision in meetings and to his chain of command. (*Id.* ¶ 22.)

Plaintiff's allegations suggest he disagreed with the Administration's political decision not to declare fentanyl a "weapon of mass destruction." A disagreement over policy is not a protected disclosure of information. Further, this issue has no connection to any of the five categories of

information protected by the statute. Additionally, Plaintiff has again failed to plausibly allege who he reported this information to, and what that person's responsibilities were.

4. <u>The social media post objecting to the termination of Mr. Hamilton was not a protected disclosure.</u>

In May 2025, Acting FEMA Director Cameron Hamilton was terminated from his position after a disagreement emerged between himself and the political leadership on how to spend FEMA funds. (*See* Compl. ¶¶ 24-25.) Following Mr. Hamilton's termination, Plaintiff posted on X (f/k/a Twitter) that he had observed that: "a temporary senior advisor was effectively directing DHS without formal authority"; Mr. Hamilton had been fired for refusing to redirect FEMA funds; and that "DHS was prioritizing political directives over mission." (*Id.* ¶ 26.)

To begin with, the social media site X is not one of the qualifying persons or bodies identified in the statute, and therefore any posting made by Plaintiff to that site is not a protected disclosure. *See Craine v. Nat'l Sci. Found.*, 687 F. App'x 682, 690 (10th Cir. 2017) (disclosure to academic journal was not protected by the statute).

Additionally, Plaintiff's post did not identify any violation of law— he claimed that Mr. Hamilton had refused to redirect the funds, which presumably meant no law had been violated. Moreover, this statement would not seem to have any connection or nexus to the contract. Further, to the extent Plaintiff was suggesting that an unappointed advisor directing DHS constituted a violation of law, such a violation is a complaint about general constitutional law applied to a Federal agency, not a violation of law related to the contract he worked on.

In sum, none of the four purported disclosures asserted in the Complaint comes close to establishing a protected disclosure under Section 4712. Consequently, the claim should be dismissed.

### C. Plaintiff has not pled that Noblis made any actionable decision, or that any such decision is casually connected to any protected disclosure.

Even if Plaintiff could establish Noblis was his employer and that he engaged in protected activity, the claim would still fail because he cannot demonstrate that any purported disclosure was a contributing factor in any adverse decision made by Noblis. *See Armstrong v. The Arcanum Grp., Inc.*, 897 F.3d 1283, 1287 (10th Cir. 2018).

First, the statute provides that a covered employee may not be "discharged, demoted, or otherwise discriminated against." 41 U.S.C. § 4712(a)(1). But Noblis is not alleged to have taken any of those actions. According to the Complaint, the Federal Government communicated to Noblis that Plaintiff was banned from DHS' property. (Compl. ¶ 12.) Noblis then relayed that message to TechINT. (*Id.*) Presumably, Plaintiff's employment was thereafter terminated since he could not perform his job without access to DHS' property.

Noblis' merely relaying DHS' decision to TechINT is not an action prohibited by the statute. *See Angeline*, 813 F. Supp. 3d at 125 & FN 5.

Moreover, even if that communication to TechINT were somehow actionable conduct, Plaintiff has not pled that Noblis made the decision to communicate DHS' decision *because of* any protected disclosure undertaken by Plaintiff. To begin with, Plaintiff has not adequately pled that Noblis' unidentified decisionmaker was even aware of the purported disclosures. That is fatal to the claim. *See, e.g., United States ex rel. Toledo v. HCA Holdings, Inc.*, 2023 WL 2823899, at *2 (5th Cir. 2023)*; Armstrong*, 897 F.3d 1283, 1287 (10th Cir. 2018).

Further, even if the relevant individual at Noblis was aware of the disclosures, Plaintiff would have to plead significant facts to raise a retaliatory inference given the obvious alternative explanation that, regardless of any protected disclosure, a prime contractor in Noblis' position would almost certainly have to alert the subcontractor for legitimate reasons that its employee <u>had</u>

been banned from the Government's property and his worksite. Plaintiff has pled no facts that would overcome that reality, and thus cannot establish any causal connection between his purported disclosures and Noblis' communication with TechINT.

### D. Noblis is not vicariously liable for the conduct of the Federal Government.

It is clear from the Complaint that Plaintiff stridently believes that DHS Senior Advisor Corey Lewandowski recommended Plaintiff's ban from DHS property to DHS leadership in retaliation for Plaintiff's post on X. (*See* Compl. ¶ 35.) But, even if that allegation is accepted as true, it does not present a basis for liability against *Noblis*.

Noblis is not vicariously liable for the conduct of the Federal Government. *See Armstrong*, 897 F.3d at 1291. Plaintiff's suggestion to the contrary is an attempt to flip cat's-paw theory on its head. That does not work. The Federal Government is not an agent of Noblis. *See id.* Consequently, Plaintiff cannot impute any retaliatory animus Mr. Lewandowski might have had against Plaintiff to Noblis. *Id.*

In sum, Plaintiff has not established any of the elements necessary to state a claim against Noblis for violation of Section 4712. Count I should be dismissed against Noblis with prejudice.

## II. Plaintiff Has Failed to State a Claim Against Noblis Under the False Claims Act.

"The False Claims Act's anti-retaliation provision protects whistleblowers who seek to expose or to prevent government fraud. Such claims are reserved for defendants who knowingly defraud the government—for example, a company that fraudulently overcharges the government for goods or a health clinic that provides the government false information to obtain Medicaid reimbursement." *Thornton v. Nat'l Acad. of Scis.*, 2025 WL 3123732, at *2 (D.D.C. 2025) (cleaned up).

To state a claim of retaliation under the FCA, Plaintiff must plausibly allege sufficient facts to show that (i) he engaged in activity protected under the statute, and (ii) Noblis retaliated against him because of that protected activity. *Abdelhamid v. Lane Constr. Corp.*, 744 F. Supp. 3d 10, 22 (D.D.C. 2024). Because, as explained below, Plaintiff cannot demonstrate either of these elements, his claim in Count II should be dismissed.

**A. Plaintiff has not pled protected activity under the FCA.**

The FCA retaliation provision protects two types of actions, those taken in furtherance of filing an FCA claim; and "efforts to stop 1 or more violations" of the FCA. 31 U.S.C. § 3730(h)(1). Plaintiff claims to have undertaken the latter type of activity. (Compl. ¶ 59.)

In order to properly state this type of claim, a plaintiff must allege sufficient facts to demonstrate that the "employee has an objectively reasonable belief that the employer is violating, or will violate, the False Claims Act" and that the employee took lawful measures to stop or avert the violation. *United States v. Novo Nordisk Inc.*, 2026 WL 880085, at *7 (D.D.C. 2026). At minimum, the plaintiff's efforts must "pertain to fraud in connection with the submission of a claim for federal government funds." *Id.*

Plaintiff points to two activities which he claims are protected under the statute.

First, Plaintiff points to his "questioning" of the decision by administration officials not to deliver the fentanyl memorandum to the President. (*See* Compl. ¶ 22.) But, disputing a policy decision made by *Government officials* would not suggest in any way that *Noblis* was somehow committing fraud. Plaintiff attempts to connect his questioning of the "suppression" decision to the FCA by alleging,

> Mr. Strickland reasonably believed that the contract deliverables produced on the fentanyl-WMD issue were being suppressed while the contracting entities—including Noblis, with which DHS had a contractual relationship,

> and ultimately the federal government—continued to represent, and bill for, substantive and complete work product on CBRN-threat policy.

(*Id.* ¶ 23.) Plaintiff does not allege that there were any improper bills, that he was aware of any improper bills, or that he ever even voiced a concern about improper bills. Moreover, the theory is implausible. Contractors typically get paid on either time spent on a project or a project's completion. The fact that Administration officials decided not to forward on work product to the President would not ordinarily affect the fees the contractor earned on putting the work product together. Plaintiff does not allege any knowledge of the contract that would alter these ordinary principles. Moreover, it is clear from Plaintiff's allegation that his objections were made to the "suppression" decision, not to any concerns regarding fraudulent billing. Consequently, this was not FCA protected activity.

Second, Plaintiff points to his X post in which, according to the Complaint, he asserted that Mr. Hamilton "had been fired for refusing to redirect federal disaster funds." (Compl. ¶ 26.) Plaintiff fails to explain how this statement relates to the FCA. Although Plaintiff describes a complicated fight over which states or cities should receive certain FEMA funds, he does not allege that any of those jurisdictions engaged in making fraudulent claims. (*See id.* ¶¶ 24-25.) More crucially, even if Plaintiff *had pled* that a jurisdiction had made a fraudulent claim, there would still be no connection between Noblis and the FEMA funds. Plaintiff clearly did not have an objectively reasonable belief that Noblis was engaged in making false claims. Consequently, his X post was not FCA protected activity.

**B. Plaintiff has not adequately pled retaliation by Noblis.**

Even if Plaintiff had pled a protected activity, the FCA claim would still fail because he has not adequately pled retaliation. To do so, he must show (i) a qualifying retaliatory employment action; (ii) Noblis' knowledge that he was engaged in protected activity, and (iii) facts showing

that the employment action was caused by his engagement in that activity. *Evans v. Individual Advoc. Grp., Inc.*, 2025 WL 2651242, at *5 (D.D.C. 2025). Plaintiff has not pled any of these elements.

Plaintiff has not pled causation under the FCA for the same reasons discussed with regard to Section 4712. Plaintiff has not pled a retaliatory employment action by Noblis — only that it communicated DHS' decision to TechINT. Likewise, even if that communication could be considered an employment decision, Plaintiff has not pled that Noblis' decisionmaker had knowledge that Plaintiff engaged in any FCA protected activity. Finally, there are no facts to suggest that any decision made by Noblis was "caused" by Plaintiff's engagement in protected activity, rather than the fact that any prime contractor would notify its subcontractor that its employee had been banned from the Government's property.

In sum, Plaintiff has not remotely pled a claim against Noblis under the FCA. Consequently, Count II should be dismissed with prejudice.

## III. Plaintiff Has Failed to State a Claim for Tortious Interference Against Noblis.

In Count IV, Plaintiff asserts a claim against Noblis for tortious interference with his employment relationship with TechINT under Virginia law. Among other things, to state a claim for tortious interference with an at-will relationship, a plaintiff must allege sufficient facts to show the defendant acted with improper methods. *Lewis-Gale Med. Ctr., LLC v. Alldredge*, 282 Va. 141, 149 (2011). When a defendant exercises its lawful contractual rights it has, by definition, not engaged in improper methods. *Id.* at 152; *Kruml v. Booz Allen Hamilton, Inc.*, 2025 WL 36977, at *8 (Va. Ct. App. 2025).

The case of *Kruml* is remarkably instructive. There the plaintiff was an employee of a subcontractor on a Federal contract with the Office of the Director of National Intelligence

(“ODNI”). *Id.* at *1. The plaintiff was subject to harassment by certain ODNI employees, which he reported to the prime contractor, Booz Allen Hamilton. *Id.* In retaliation for the report, the ODNI employees terminated the plaintiff’s access to ODNI’s secure sites. *Id.* Following that decision by ODNI, Booz Allen exercised its power under its subcontract agreement to have the plaintiff removed from the ODNI contract. *Id.* Kruml sued Booz Allen for tortious interference. *Id.* at *2. The trial court dismissed the case and the Virginia Court of Appeals affirmed because Booz Allen’s removal of the plaintiff from the contract was a lawful exercise of its contractual rights, and therefore there was no improper method. *Id.* at *6-7.

The instant case presents nearly the same scenario as was present in *Kruml*. Noblis is alleged to have possessed the contractual right to remove Plaintiff from the Federal contract, and Plaintiff claims injury as the result of Noblis’ alleged exercise of that right. For the reasons set out above, Noblis did not act unlawfully. Consequently, Plaintiff is incapable of demonstrating that Noblis used improper methods, and his claim for tortious interference must be dismissed.

## IV. Count V Does Not State a Claim.

In Count V, Plaintiff purports to state a separate count for declaratory and injunctive action. Count V, however, only requests relief, and does not state an independent legal claim against Noblis. Because, for the reasons stated above, Plaintiff has not set out any viable legal claims against Noblis in the prior counts, he is not entitled to any relief, including the equitable relief requested in Count V.

## CONCLUSION

For the reasons stated above, Plaintiff’s Complaint fails to state a claim against Noblis. Consequently, the Counts asserted against it should be dismissed with prejudice and Noblis should be dismissed from this action.

Dated: October 5, 2026

Respectfully submitted,

/s/ Micah E. Ticatch

Micah E. Ticatch, DC Bar No. 1005398
Edward Lee Isler, DC Bar No. 417076
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Noblis, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of October 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will serve a copy on all counsel of record.

/s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Noblis, Inc.*