**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MATTHEW STRICKLAND,

Plaintiff,

v.

TECHINT SOLUTIONS GROUP, LLC

and

NOBLIS, Inc., *et al.*,

Defendants.

Civil Action No. 26-02444 (EGS)

**DEFENDANT TECHINT SOLUTIONS GROUP, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DIMISS**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

I. Relevant Factual Allegations .......... 2

- A. Plaintiff's Assignment to the CWMD Contract .......... 2
- B. Plaintiff's Alleged "Protected Disclosures" .......... 3
- C. Plaintiff's Removal from the CWMD Contract .......... 6

II. Procedural History .......... 7

LEGAL STANDARDS .......... 7

ARGUMENT .......... 9

I. Plaintiff Fails to State a Claim for Whistleblower Retaliation Under 41 U.S.C. § 4712 as to TechINT (Count I). .......... 9

- A. Plaintiff's alleged disclosures do not constitute protected activity under § 4712. .......... 9
- B. The Complaint alleges no reprisal by TechINT. .......... 11
- C. The Complaint fails to adequately allege exhaustion as to TechINT as required by § 4712 .......... 11

II. Plaintiff Fails to State a Claim for FCA Retaliation by TechINT Under 31 U.S.C. § 3730(h) (Count II). .......... 12

- A. Plaintiff did not engage in FCA-protected activity .......... 13
- B. TechINT lacked notice of Plaintiff's alleged protected activity .......... 14
- C. There is no causal connection between Plaintiff's alleged protected activity and any adverse action by TechINT .......... 15

III. Count V Provides No Independent Cause of Action .......... 16

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adams v. Fort Myer Constr. Co.*,
No. 1:25-cv-1949 (TNM), 2026 U.S. Dist. LEXIS 95481 (D.D.C. Apr. 30, 2026) ....8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....8

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) ....9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....7, 8

*Bello v. Howard Univ.*,
898 F. Supp. 2d 213 (D.D.C. 2012) ....8

*Cimino v. IBM*,
No. 13-cv-00907 (APM), 2019 U.S. Dist. LEXIS 168059 (D.D.C. Sep. 30, 2019) ....15

*EEOC v. St. Francis Xavier Parochial Sch.*,
117 F.3d 621 (D.C. Cir. 1997) ....9

*United States ex rel. Hoyte v. Am. Nat'l Red Cross*,
518 F.3d 61 (D.C. Cir. 2008) ....13, 14

*Jones v. Horne*,
634 F.3d 588 (D.C. Cir. 2011) ....8

*Kaempe v. Myers*,
367 F.3d 958 (D.C. Cir. 2004) ....9

*Park v. Howard Univ.*,
71 F.3d 904 (D.C. Cir. 1995) ....12

*Perez v. Vance Unif. Prot. Servs.*,
2008 U.S. Dist. LEXIS 58587 (E.D. Va. July 30, 2008) ....16

*Shekoyan v. Sibley International*,
409 F.3d 414 (D.C. Cir. 2005) ....14

*Singletary v. Howard Univ.*,
939 F.3d 287 (D.C. Cir. 2019) ....15

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ........ 8

*Taylor v. FDIC*,
132 F.3d 753 (D.C. Cir. 1997) ........ 8

*Thornton v. Nat'l Academy of Scis.*,
No. 25-cv-2155 (D.D.C. Nov. 7 2025) ........ 13

*Uru v. Rubio*,
No. 25-02524 (PLF), 2026 U.S. Dist. LEXIS 39122 (D.D.C. Feb. 25, 2026) ........ 8

*United States ex rel. Yesudian v. Howard Univ.*,
153 F.3d 731 (D.C. Cir. 1998) ........ 13, 14

**Statutes**

31 U.S.C. § 3730(h) ........ 7, 9, 12, 13, 15

41 U.S.C. § 4712 ........ *passim*

False Claims Act ("FCA") ........ *passim*

Federal Tort Claims Act ........ 7

Defendant TechINT Solutions Group, LLC ("TechINT"), by and through undersigned counsel, respectfully moves to dismiss Plaintiff Matthew Strickland's ("Plaintiff's") Complaint in its entirety as to Defendant TechINT pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. As explained more fully below, Plaintiff's Complaint fails to state a claim of whistleblower or False Claims Act ("FCA") retaliation as to Defendant TechINT.

## INTRODUCTION

Plaintiff is a former analyst for TechINT, a subcontractor to Noblis, Inc. ("Noblis") for the Department of Homeland Security ("DHS"). During his employment with TechINT, Plaintiff supported DHS's Countering Weapons of Mass Destruction Office ("CWMD") in a contractor capacity until his removal from the contract on May 15, 2025. In his Complaint (ECF No. 1), he alleges that his removal from CWMD was motivated by retaliation for a series of workplace complaints and public statements he characterizes as protected false claims and whistleblowing activity. Despite bringing this action against TechINT, Plaintiff acknowledges that he directed the alleged protected disclosures solely at DHS officials, and that DHS political leadership, not TechINT, made the decision to remove him from CWMD.

Even though TechINT had no knowledge of the alleged disclosures and played no role in the decision to remove Plaintiff from the CWMD contract, Plaintiff now attempts to impose liability on TechINT for the alleged retaliation by DHS leadership. As explained in detail below, Plaintiff cannot satisfy his burden to state a claim for relief against TechINT for several reasons. *First*, Plaintiff cannot establish whistleblower retaliation under § 4712 because the alleged disclosures do not constitute protected activity, Plaintiff does not allege knowledge of protected activity or reprisal by TechINT, and Plaintiff has not shown administrative exhaustion as to TechINT. *Moreover*, Plaintiff has not stated a claim for FCA retaliation against TechINT because

he identifies no disclosure or opposition involving a false claim or false certification. Even if Plaintiff could establish FCA-protected activity, he alleges no facts to show TechINT was on notice or that such activity was causally connected to any adverse action by TechINT. *Finally*, as Plaintiff has failed to state a claim for relief against TechINT, TechINT is not liable to Plaintiff for declaratory or injunctive relief. Accordingly, TechINT respectfully requests that the Court dismiss Plaintiff's Complaint in full as to Defendant TechINT (Counts I, II, and V).

## BACKGROUND

### I. Relevant Factual Allegations[1]

#### A. Plaintiff's Assignment to the CWMD Contract

At all relevant times, TechINT was a subcontractor to Noblis, the prime contractor on DHS's CWMD contract. Compl. (ECF No. 1) ¶¶ 11-12. Plaintiff, a former TechINT employee, began supporting CWMD's Information and Analysis Directorate ("IAD") in a contractor capacity in March 2024. *Id.* ¶ 14. Throughout his CWMD tenure, Plaintiff held a Top Secret/Sensitive Compartmented Information ("TS/SCI") clearance. *Id.* Plaintiff's CWMD portfolio included policies related to classification of Weapons of Mass Destruction ("WMDs"), drone-borne chemical, biological, radiological, and nuclear ("CBRN") threats, and interagency intelligence sharing and cross-component coordination. *Id.* ¶ 15.

As an analyst for CWMD, Plaintiff reported to DHS leadership. Desiree Dawson, a DHS civilian employee, served as Plaintiff's first-line supervisor. *Id.* Plaintiff's chain of command also included Assistant Secretary David Richardson (the head of CWMD), Deputy Assistant Secretary Steve Griffin (SES and the head of IAD), and other senior DHS civilians. *Id.*; *see also id.* ¶ 16 (acknowledging that Griffin and DHS employee Carlos Joyner were Plaintiff's IAD supervisors).

[1] Defendant TechINT accepts the factual allegations in Plaintiff's Complaint as true only for purposes of this Motion to Dismiss.

B. Plaintiff's Alleged "Protected Disclosures"

In his Complaint, Plaintiff identifies four alleged disclosures that he claims constitute protected whistleblowing activity. *See id.* ¶¶ 17-27, 51, 59. *First*, Plaintiff expressed concerns related to an interagency intelligence report prepared by DHS's Office of Intelligence and Analysis ("I&A") that allegedly recommended unlawful surveillance of American victims of Hurricane Helene ("Hurricane Helene Report"). *Id.* ¶ 17. In October 2024, I&A circulated a draft of the Hurricane Helene Report for review and comment by IAD and other DHS offices. *Id.* Upon his review, Plaintiff became concerned that the proposed recommendations would "implicate the First Amendment rights of American citizens, exceed DHS's lawful authorities, and damage public trust." *Id.* He claims he elevated his concerns, in writing, to federal employees responsible for oversight of DHS contracts and grants within his chain of command. *Id.* ¶ 18. Despite his disclosure, he claims DHS officials failed to address his concerns or make necessary corrections to the report. *Id.* Plaintiff claims he believed the surveillance recommendations contained in the Hurricane Helene Report "evidenced gross mismanagement of a federal contract, abuse of authority relating to a federal contract, and a violation of law." *Id.* Absent from the Complaint is any allegation that Plaintiff raised these concerns with TechINT. *Id.*

*Second*, Plaintiff claims he "repeatedly alerted IAD leadership" to news reports of unexplained drone sightings beginning in December 2024. *Id.* ¶ 19. He states he "reminded IAD leadership" of intelligence reporting on potential chemical, biological, radiological, or nuclear threats posed by the drones and routinely asked why CWMD, and particularly IAD, had not addressed such threats. *Id.* In response, Plaintiff alleges his DHS supervisors dismissed the drone reports as outside the scope of CWMD's mission. *Id.* He adds that he reasonably believed the "neglect of these threats" by DHS leadership constituted "gross mismanagement of the CWMD

contract, abuse of authority relating to that contract, and a substantial and specific danger to public health and safety." *Id.* Plaintiff does not allege that he informed TechINT personnel of his grave concerns about the implications of CWMD's alleged failure to address drone threats. *See id.*

*Next*, Plaintiff alleges he reported the alleged suppression of a memorandum he prepared advocating for the classification of illicit fentanyl as a WMD based on his insights from participation in interagency working groups aimed at combating the crisis caused by illicit use of the drug. *Id.* ¶¶ 20-21. He claims that DHS political leadership, specifically Corey Lewandowski (senior advisor to Secretary Kristi Noem) and Deputy Secretary Troy Edgar, prevented the memorandum from moving forward to avoid negative impacts on the pharmaceutical industry. *Id.* ¶ 21. Plaintiff then "repeatedly questioned the suppression of the memorandum in meetings and to his chain of command." *Id.* ¶ 22. Further, he contends that the contracting entities continued to represent and bill for complete work on CBRN threats while simultaneously suppressing the memorandum, a contract deliverable, thereby constituting false claims to the federal government. *Id.* ¶ 23. Though Plaintiff believed the actions by Lewandowski and Edgar implicated the FCA and represented gross mismanagement and abuse of authority of the federal contract, he does not claim to have brought his concerns to TechINT. *See id.* ¶¶ 22-23.

*Finally*, Plaintiff points to a social media post on X in which he expressed support for Cameron Hamilton, former Acting Director for the Federal Emergency Management Agency ("FEMA"), following Hamilton's termination on May 8, 2025. *Id.* ¶¶ 25-26. Through his work at CWMD, Plaintiff alleges he learned that Lewandowski had been directing DHS operations without congressional approval. *Id.* ¶ 24. Specifically, he claims that unnamed "federal personnel involved in FEMA operations" informed Plaintiff of efforts by Lewandowski to inappropriately route approximately $55 million of FEMA's disaster relief funds to Louisiana to benefit his former

client, Governor Jeff Landry. *Id.* According to Plaintiff, Hamilton, acting at the direction of Lewandowski, unsuccessfully sought approval to release the funds from the White House. *Id.* When the White House denied the request, Lewandowski demanded that Hamilton release the funds without executive approval, and Hamilton refused. *Id.*

Further, Plaintiff alleges that Secretary Noem's legal counsel instructed Hamilton to direct unauthorized FEMA expenditures to New York City, and Hamilton, believing the direction came from the White House, complied. *Id.* Hamilton later learned that the White House had not directed or authorized the expenditures, and Lewandowski blamed Hamilton for the unapproved release of funds. *Id.* The rift between Hamilton and Lewandowski, and Hamilton's refusal to execute orders from Noem and Lewandowski that he perceived as unethical, ultimately culminated in Hamilton's termination on May 8, 2025. *Id.* ¶¶ 24-25.

Within days of Hamilton's firing, Plaintiff, through a post on X, expressed his opinion that a temporary senior advisor was inappropriately directing DHS without formal authority, that Hamilton had been fired for refusing to redirect unapproved disaster funds, and that DHS "was prioritizing political directives over mission." *Id.* ¶ 26. Plaintiff's social media post did not identify Lewandowski or other DHS officials involved in the termination decision. *Id.* He contends that his post was "an effort to stop conduct he reasonably believed involved fraud on the federal government and violations of federal contract and grant law. *Id.* ¶ 27. He further argues that the alleged FEMA diversions, if executed, would have constituted false certifications to the federal government. *Id.* The facts as alleged show that TechINT owner, Skip Funicello, was not even aware of the X post until after Plaintiff's removal from the contract. *Id.* ¶ 42. Additionally, Plaintiff notes that Funicello agreed the X post did not violate the terms of the CWMD contract. *Id.*

Plaintiff clarifies that he directed all of the alleged disclosures to federal employees responsible for oversight or management of DHS contracts and grants, the DHS Office of Inspector General ("OIG"), and interagency participants in the fentanyl-WMD policy working group. *Id.* ¶ 52. Nowhere in his Complaint does he claim to have made the same disclosures to TechINT. *See id.*

C. Plaintiff's Removal from the CWMD Contract

On the morning of May 15, 2025, Plaintiff met with Deputy Assistant Secretary Griffin to notify him that he would be moving from IAD to a new position on CWMD's Strategy Team due to alleged hostility from IAD leadership. *Id.* ¶¶ 15-16, 32. Plaintiff claims that Griffin agreed the transition to CWMD's Strategy Team was appropriate. *Id.* ¶¶ 16, 32. Later that day, at approximately 7:30 PM, Assistant Secretary Richardson called Plaintiff to inform him of DHS's decision to remove him from the CWMD contract. *Id.* ¶¶ 33-34, 52. Richardson told Plaintiff that "one of the four horsemen," a nickname for Secretary Noem's political staffers, wanted Plaintiff fired because of the social media post defending FEMA's former Acting Director Hamilton. *Id.* ¶¶ 33, 37. Plaintiff further alleges an unidentified "senior DHS official who was involved in the events" informed Plaintiff that Lewandowski ordered his removal. *Id.* ¶ 3.

Shortly after his telephone conversation with Richardson, Plaintiff received a call from TechINT owner, Skip Funicello. *Id.* ¶¶ 34, 37. Funicello informed Plaintiff that DHS officials had banned him from DHS property. *Id.* The following day, Plaintiff contacted Funicello multiple times for additional information on the property ban and removal from the CWMD contract. *Id.* ¶ 38. Funicello responded each time that neither Noblis nor DHS provided any clarifying information, though Funicello stated he attempted to reach Noblis on the telephone several times to no avail. *Id.* About two days later, "DHS and the contractors" informed Plaintiff of his removal

from the CWMD contract due to Plaintiff performing work outside the scope of his contract. *Id.* Plaintiff expressly states in his Complaint that DHS officials ordered his removal from the contract, and that Noblis and TechINT merely complied with their government client's demand. *See id.* ¶ 36.

## II. Procedural History

On July 12, 2026, Plaintiff filed the instant Complaint alleging claims against TechINT, Noblis, and the United States of America. Plaintiff claims that before filing this Complaint, he submitted a whistleblower retaliation complaint under 41 U.S.C. § 4712 to DHS's OIG on September 3, 2025, and that more than 210 days elapsed without an order. *Id.* ¶¶ 6, 9, 46-47. Plaintiff seeks reinstatement, back pay, compensatory and special damages, attorneys' fees and costs, and other equitable relief.

As to TechINT, Plaintiff asserts Count I for whistleblower retaliation under 41 U.S.C. § 4712, Count II for FCA retaliation under 31 U.S.C. § 3730(h), and Count V for declaratory and injunctive relief. *Id.* ¶¶ 49-64, 81-83. Plaintiff likewise asserts Counts I, II, and V against Noblis, as well as Count IV for tortious interference with contractual and business relations under Virginia law. *Id.* ¶¶ 49-64, 74-83. As to the United States, Plaintiff asserts Count III for intentional infliction of emotional distress under the Federal Tort Claims Act, based solely on the alleged harassment, professional isolation, and humiliation by DHS officials. *Id.* ¶¶ 65-73. This Motion addresses only Counts I, II, and V as asserted against TechINT. TechINT takes no position on Plaintiff's claims against Noblis or the United States.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Adams v. Fort Myer Constr. Co.*, No. 1:25-cv-1949 (TNM), 2026 U.S. Dist. LEXIS 95481, at *4-5 (D.D.C. Apr. 30, 2026). While Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," *Twombly*, 550 U.S. at 555 (cleaned up), dismissal is warranted where the complaint fails to allege facts that plausibly give rise to an entitlement to relief, *id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plausibility standard "is not akin to a 'probability requirement,'" but it demands more than a mere possibility of misconduct. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). In evaluating a motion to dismiss, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but "need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." *Uru v. Rubio*, No. 25-02524 (PLF), 2026 U.S. Dist. LEXIS 39122, at *7 (D.D.C. Feb. 25, 2026). A plaintiff must therefore plead more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In the employment-discrimination context, a plaintiff need not plead a prima facie case to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Even so, the complaint must allege sufficient nonconclusory facts to plausibly support each essential element of the asserted claim. *Jones v. Horne*, 634 F.3d 588, 597 (D.C. Cir. 2011); *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997). Dismissal remains appropriate where the pleaded facts, even taken as true, fail to establish a required element of the cause of action. *See Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 220 (D.D.C. 2012).

When resolving a motion to dismiss, the Court may consider not only the allegations in the complaint but also documents attached to or incorporated by reference into the complaint, as well

as matters subject to judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). The Court may likewise consider documents expressly referenced in the complaint and integral to the plaintiff's claims without converting the motion into one for summary judgment. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133-34 (D.C. Cir. 2015); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

## ARGUMENT

Each of Plaintiff's claims against TechINT fails for the same fundamental reason: by Plaintiff's own account, DHS, not TechINT, received his alleged disclosures and decided to remove him from the CWMD contract. Plaintiff alleges that DHS leadership retaliated against him for four "protected disclosures": (1) an internal complaint regarding the Hurricane Helene Report's alleged recommendation to surveil American hurricane victims; (2) reports to DHS leadership regarding unexplained drone sightings; (3) complaints regarding suppression of a memorandum advocating that illicit fentanyl be classified as a WMD; and (4) a public X post concerning the firing of FEMA's former Acting Director. He contends that all four are protected under 41 U.S.C. § 4712, and that the third and fourth are also protected FCA activity under 31 U.S.C. § 3730(h)(1). As shown below, none of these disclosures is protected activity under either statute, Plaintiff pleads no facts showing that TechINT knew of them, the Complaint attributes the removal decision exclusively to DHS, and Plaintiff did not exhaust his § 4712 claim as to TechINT. The Court should therefore dismiss Counts I, II, and V as to TechINT.

### I. Plaintiff Fails to State a Claim for Whistleblower Retaliation Under 41 U.S.C. § 4712 as to TechINT (Count I).

A. Plaintiff's alleged disclosures do not constitute protected activity under § 4712.

Section 4712 prohibits reprisal against employees of federal contractors and subcontractors who disclose evidence of waste, fraud, abuse, or dangers to public health or safety. A disclosure is protected only if the employee reasonably believes it evidences: (1) gross mismanagement of a federal contract or grant, (2) gross waste of federal funds, (3) abuse of authority related to a federal contract or grant, (4) substantial and specific danger to public health or safety, or (5) violation of law, rule, or regulation related to a federal contract or grant. The employee must also direct the disclosure to a specified recipient, such as a member of Congress, an Inspector General, the Government Accountability Office ("GAO"), the Department of Justice or other law enforcement, a court, or a federal employee responsible for contract or grant oversight. Conclusory invocation of these statutory categories does not suffice.

Plaintiff's disclosures are policy disagreements with no nexus to a federal contract. He describes the Hurricane Helene Report as an I&A intelligence product containing a recommendation with which he disagreed, and the FEMA matter as a dispute among DHS and FEMA leadership over the allocation of disaster funds, on which his X post expressed a view. He identifies no federal contract or TechINT deliverable related to either subject, and he does not explain how disagreements over the prioritization of drone threats or the classification of illicit fentanyl as a WMD constitute gross mismanagement or abuse of authority relating to a federal contract. Attaching statutory labels to policy disputes does not plead protected activity under § 4712.

Two of the disclosures also fail for independent reasons. *First*, the Hurricane Helene complaint falls within § 4712(f), which excludes disclosures related to an activity of an element of the intelligence community; Plaintiff's complaint concerned an I&A intelligence product recommending surveillance and arose from his review of that product. *Second*, the X post was not

made to any covered recipient under § 4712(a)(2). Plaintiff alleges only a public social-media statement supporting former FEMA Acting Director Hamilton, not a disclosure to Congress, an inspector general, GAO, a federal employee responsible for contract oversight, a court or grand jury, or an authorized investigator. Compl. (ECF No. 1) ¶¶ 25-27, 51-52. A statement to an undifferentiated social media audience is not a protected disclosure and Count I cannot rest on it.

B. The Complaint alleges no reprisal by TechINT.

Even if any disclosure were protected, Count I fails because the Complaint alleges no reprisal by TechINT. Plaintiff attributes the removal decision to DHS: DHS communicated the removal and property ban to Noblis, Noblis conveyed the directive to TechINT, and TechINT relayed it to Plaintiff. Compl. (ECF No. 1) ¶¶ 12, 34-38. Plaintiff concedes that Noblis, as prime contractor, controlled staffing on the CWMD contract, *id.* ¶ 12, and that his removal was ordered by DHS officials with which the contractors merely complied, *see id.* ¶ 36. These allegations show, at most, that TechINT relayed a decision made by others, not that TechINT made, influenced, or independently carried out a reprisal. The Court should thus dismiss Count I as to TechINT on this ground alone.

C. The Complaint fails to adequately allege exhaustion as to TechINT as required by § 4712.

Section 4712 also requires administrative exhaustion before suit. A complainant "may submit a complaint to the Inspector General of the executive agency involved," which investigates and reports its findings to the complainant, the contractor, and the agency head; the agency head then determines whether the contractor subjected the complainant to a reprisal and issues an order granting or denying relief. 41 U.S.C. § 4712(b)(1), (c)(1). Only after the agency head denies relief, or fails to issue an order within 210 days, is the complainant "deemed to have exhausted all administrative remedies with respect to the complaint." *Id.* § 4712(c)(2). Because the process is

designed to allow the Inspector General to investigate, and the agency head to adjudicate, whether a particular contractor committed reprisal, exhaustion extends only to the contractor and matters presented in the administrative complaint. *Id.* § 4712(b)(1), (c)(1)-(2).

Plaintiff does not plead exhaustion as to TechINT. He alleges that his September 3, 2025, OIG complaint "identified the protected disclosures, the retaliatory acts, and the responsible DHS officials," and that 210 days passed without an order. Compl. (ECF No. 1) ¶¶ 46-47. He does not allege that the OIG complaint named TechINT or claimed that TechINT committed reprisal. If the OIG complaint was directed at DHS officials, or at Noblis, then TechINT was never the subject of the administrative process Congress required, and there is no exhausted claim "with respect to the complaint" against TechINT. 41 U.S.C. § 4712(c)(2).

Even if the OIG complaint named TechINT, Count I cannot proceed on matters outside that complaint. *Cf. Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (the court should dismiss claims outside the scope of the administrative charge). This scope limitation gives the agency the opportunity to investigate and resolve the complaint and gives the accused contractor notice of the claim against it. The Complaint pleads four distinct disclosures involving different subjects, audiences, and DHS components, Compl. (ECF No. 1) ¶¶ 17-27, and references alleged retaliatory conduct predating Plaintiff's removal, such as increased reporting requirements and workplace isolation by IAD leadership, *see id.* ¶¶ 28-31, 43. To the extent any of these disclosures, acts, or respondents were not presented to the Inspector General, they are unexhausted. Count I should therefore be dismissed as to TechINT for failure to exhaust.

## II. Plaintiff Fails to State a Claim for FCA Retaliation by TechINT Under 31 U.S.C. § 3730(h) (Count II).

To state an FCA retaliation claim under § 3730(h), a plaintiff must plead: (1) that the employee engaged in protected activity, *i.e.*, lawful acts done "in furtherance of" an effort to stop

one or more FCA violations; (2) that the employer knew the employee was engaged in such protected activity; and (3) that the employer retaliated against the employee because of the protected activity. *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998). Protected activity must be conducted such that the employer could reasonably have understood that it was directed at matters that are "calculated, or reasonably could lead, to a viable FCA action." *United States ex rel. Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 69 (D.C. Cir. 2008). Plaintiff fails to plead any of the three elements as to TechINT.

A. Plaintiff did not engage in FCA-protected activity.

Section 3730(h) protects efforts to stop violations of the False Claims Act, not every objection to government conduct or policy. Plaintiff identifies as FCA-protected activity his objections to DHS leadership's suppression of his fentanyl-WMD memorandum and to the allocation of FEMA funds. Compl. (ECF No. 1) ¶¶ 21-23, 24-27, 59-60. But he identifies no false claim, claim for payment, or false certification submitted by any contractor or claimant. As with Count I, these objections concern policy decisions by DHS political leadership, not fraud on the government. *See id.*; *see also Thornton v. Nat'l Academy of Scis.*, No. 25-cv-2155 (D.D.C. Nov. 7 2025) (holding that an employee's objections to how a federally funded study was being managed did not constitute FCA-protected activity).

The FEMA allegations are especially deficient. Plaintiff alleges only that the fund diversions would have constituted false certifications "if executed," *id.* ¶ 27, and although he alleges that Hamilton complied with an instruction to direct certain expenditures, he identifies no resulting false claim or certification, claimant, or funds obtained on false pretenses. A public X post supporting a fired official is not, without more, an effort to stop an FCA violation. *Id.* ¶¶ 25-27. Because protected activity is a threshold element, Count II fails.

B. TechINT lacked notice of Plaintiff's alleged protected activity.

Count II independently fails because Plaintiff pleads no facts showing that TechINT knew of his alleged protected activity. An employer cannot retaliate "because of" protected activity unless it has actual or constructive knowledge that the employee's conduct was directed at potential FCA violations, not merely general workplace complaints or policy disagreements. *See Hoyte*, 518 F.3d at 69-70 (requiring that the protected acts give the employer notice that the employee was working toward an FCA action or investigation). Courts dismiss FCA retaliation claims where the employer lacked notice that the employee's activities were directed toward uncovering fraud on the government rather than internal policy disputes. *See, e.g.*, *Yesudian*, 153 F.3d at 740 (holding that an employee's "dissatisfaction with one's treatment on the job" or investigation of his employer's "non-compliance with federal or state regulations" are not enough); *see also Shekoyan v. Sibley International*, 409 F.3d 414, 423 (D.C. Cir. 2005) (stating that an employee who does nothing more than inform his supervisor of a problem does not engage in FCA-protected conduct).

The Complaint does not allege that Funicello or anyone at TechINT knew of Plaintiff's alleged disclosures, much less understood them to be FCA-related. Plaintiff directed his fentanyl-WMD complaints "in writing to his chain of command—federal employees responsible for contract and grant oversight at the agency." Compl. (ECF No. 1) ¶ 22. He does not allege that he ever told TechINT that he believed false claims were being submitted or that he was investigating potential FCA violations. Although the Complaint concludes that TechINT knew the conduct was protected, it identifies no TechINT recipient, no communication to TechINT about a false claim or false certification, and no facts showing how TechINT acquired such knowledge. *See id.* ¶¶ 51, 59-61. That bare conclusion does not plausibly plead notice.

Nor did the X post put TechINT on FCA notice. The post supported Hamilton and referenced FEMA fund diversions; the Complaint does not allege that it referenced a false claim, false certification, or fraud on the government. Funicello reviewed the post and "agreed that the post did not violate Mr. Strickland's contract in any way," Compl. (ECF No. 1) ¶ 26, showing that TechINT viewed it as a contract-compliance question, not FCA activity.

At bottom, Plaintiff's Complaint is devoid of any allegations that Funicello, or any TechINT employee, knew of Plaintiff's alleged protected disclosures or understood Plaintiff's activities to be FCA-related. Plaintiff only asserts that he complained to Funicello about the creation of hostile work environment by IAD leadership, noting that Deputy Assistant Secretary Griffin's daily reporting requirement constituted harassment. He further claims that Funicello recommended Plaintiff file a hostile work environment complaint due to the alleged hostile work environment harassment by IAD leadership. These allegations concern workplace treatment, not disclosures of contract fraud. Thus, Plaintiff's reports of hostile work environment to Funicello did not put Funicello or TechINT on notice that Plaintiff was engaging in FCA-protected activity. As nothing in Plaintiff's complaint alleges Funicello, or any TechINT employee, knew of Plaintiff's alleged protected disclosures or understood Plaintiff's activities to be FCA-related, Plaintiff's retaliation claims against TechINT cannot survive. *See Singletary v. Howard Univ.*, 939 F.3d 287, 300 (D.C. Cir. 2019) ("Common sense teaches that an employer cannot retaliate against conduct of which it was unaware.")

C. There is no causal connection between Plaintiff's alleged protected activity and any adverse action by TechINT.

Finally, § 3730(h) adverse action results because of the protected activity, a but-for standard. *See Cimino v. IBM*, No. 13-cv-00907 (APM), 2019 U.S. Dist. LEXIS 168059, at *18 (D.D.C. Sep. 30, 2019) (holding that causation under the FCA is a "but for standard"). In the

government-contractor context, the causal nexus must connect the protected activity to the employer's own adverse action. *Cf. Perez v. Vance Unif. Prot. Servs.*, 2008 U.S. Dist. LEXIS 58587, at *8-9 (E.D. Va. July 30, 2008) (examining whether employer had independent discriminatory or retaliatory motive or merely acted at the direction of the government client). Where a third party made the decision and the employer merely executed it without independent retaliatory intent, the causal chain is broken.

As shown in Section I.B, the Complaint attributes the removal decision exclusively to DHS: DHS officials ordered it, Noblis conveyed the directive, and TechINT notified Plaintiff. Compl. (ECF No. 1) ¶¶ 12, 34-38. By Plaintiff's own admission, his removal was "ordered at the senior political level, not made independently by the contractor," and Funicello "did not know whether Mr. Strickland was being fired" and "was given no reason for the property ban." *Id.* ¶ 37. TechINT exercised no independent judgment or discretion; it relayed a directive it received.

Nor does the Complaint plead any independent retaliatory motive by TechINT. To the contrary, it alleges that Funicello agreed the X post "did not violate Mr. Strickland's contract in any way" and later apologized for what he characterized as an unlawful termination by DHS officials. *Id.* ¶¶ 26, 40, 42. These allegations show TechINT was sympathetic to Plaintiff and negate any inference that it harbored its own retaliatory motive; the only retaliatory motive Plaintiff pleads belongs to DHS political officials. Because the "because of" standard requires more than execution of another party's decision, Count II should be dismissed as to TechINT.

## III. <u>Count V Provides No Independent Cause of Action.</u>

Count V seeks declaratory and injunctive relief based on the same alleged violations asserted in Counts I and II. Compl. (ECF No. 1) ¶¶ 81-83. The Declaratory Judgment Act supplies a form of relief, not a standalone claim, and equitable relief therefore rises or falls with the

underlying causes of action. Count V identifies no independent statutory or common-law cause of action against TechINT, and Counts I and II fail. Count V should therefore be dismissed as to TechINT.

## CONCLUSION

Plaintiff's own allegations establish that he reported his concerns to DHS, that DHS decided to remove him, and that TechINT merely relayed that decision. Count I fails because Plaintiff's disclosures are not protected under 41 U.S.C. § 4712, the Complaint alleges no reprisal by TechINT, and Plaintiff did not exhaust administrative remedies as to TechINT. Count II fails because Plaintiff pleads no FCA-protected activity, no facts showing TechINT knew of any such activity, and no causal connection between that activity and any action by TechINT. Count V fails because it is derivative of Counts I and II and states no independent cause of action. TechINT therefore respectfully requests that the Court dismiss Counts I, II, and V as to Defendant TechINT.

Date: October 5, 2026

Respectfully submitted,

*/s/ Dedra S. Curteman*
Dedra S. Curteman (D.C. Bar No. 90021492)
JACKSON LEWIS, P.C.
11790 Sunrise Valley Drive, Suite 400
Reston, VA 20191
Tel: (703) 483-8333
Fax: (703) 483-8301
E-mail: Dedra.Curteman@jacksonlewis.com

*Counsel for Defendant TechINT*