**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MATTHEW STRICKLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:26-cv-02444** |
| | ) | |
| **TECHINT SOLUTIONS** | ) | |
| **GROUP, LLC, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**NOBLIS, INC.'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION TO DISMISS AMENDED COMPLAINT**

Micah E. Ticatch, DC Bar No. 1005398
Edward Lee Isler, DC Bar No. 417076
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Noblis, Inc.*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

BACKGROUND ..... 1

PROCEDURAL HISTORY ..... 3

ARGUMENT ..... 4

I. Plaintiff Has Not Stated a Claim Under Section 4712 Against Noblis ..... 4

A. Plaintiff has not adequately pled that Noblis was his employer. ..... 4

B. Plaintiff has not pled a protected disclosure. ..... 5

1. Comments about the Hurricane Helene Report were not a protected disclosure. ..... 7

2. Forwarding news reports of drone sightings was not a protected disclosure. ..... 8

3. The questioning of the distribution of the "Fentanyl Memorandum" was not a protected disclosure. ..... 8

4. Plaintiff's communication to Noblis that his DHS supervisors were requiring him to track his work activities was not a protected disclosure. ..... 9

C. Plaintiff has not pled that Noblis made any actionable decision, or that any such decision is causally connected to any protected disclosure. ..... 11

D. Noblis is not vicariously liable for the conduct of the Federal Government. ..... 12

II. Plaintiff Has Failed to State a Claim for Tortious Interference Against Noblis. ..... 13

III. Plaintiff's Claims Against Noblis Should Be Dismissed With Prejudice. ..... 14

CONCLUSION ..... 14

## TABLE OF AUTHORITIES


*Angeline v. ATCS, PLLC*,
813 F. Supp. 3d 112 (D.D.C. 2025) .......... 4, 11

*Arawole v. Master Sec. Co., LLC*,
2025 WL 947477 (D.D.C. 2025) .......... 4, 6

*Armstrong v. The Arcanum Grp., Inc.*,
897 F.3d 1283 (10th Cir. 2018) .......... 11, 12, 13

*Delebreau v. Danforth*,
743 F. App'x 43 (7th Cir. 2018) .......... 4

*Fruge v. Bd. of Governors of Fed. Rsrv. Sys.*,
2022 WL 5166031 (D.D.C. 2022) .......... 10

*Fuerst v. Hous. Auth. of City of Atlanta, Georgia*,
38 F.4th 860 (11th Cir. 2022) .......... 6

*Kareem v. Haspel*,
986 F.3d 859 (D.C. Cir. 2021) .......... 11

*Kruml v. Booz Allen Hamilton, Inc.*,
2025 WL 36977 (Va. Ct. App. 2025) .......... 13, 14

*Lewis-Gale Med. Ctr., LLC v. Alldredge*,
282 Va. 141 (2011) .......... 13

*McCane v. Sch. Dist. of Pasco Cnty.*,
2020 WL 495219 (M.D. Fla. 2020) .......... 7

*Sargent v. Pompeo*,
2020 WL 5505361 (D.D.C. 2020) .......... 6, 10

*United States ex rel. Toledo v. HCA Holdings, Inc.*,
2023 WL 2823899 (5th Cir. 2023) .......... 12

*Wonneman v. Global Grab Technologies Inc.*,
2026 WL 2884156 (D.D.C. 2026) .......... 5

In his Amended Complaint (Dkt. 25), Plaintiff Matthew Strickland alleges claims against Defendant Noblis, Inc. ("Noblis") for whistleblower reprisal under 41 U.S.C. § 4712 ("Section 4712") (Count I) and tortious interference with contractual and business relations (Count III).

As explained below, Plaintiff has not come close to plausibly stating his claims. Among the many reasons his claims fail: Plaintiff did not engage in any protected conduct; Noblis was not aware of the conduct Plaintiff incorrectly asserts was protected; to the extent Noblis "removed" Plaintiff from the contract, such decision was clearly because the U.S. Government barred him from working on its property; and the impetus for the Government's decision was Plaintiff's posting on X— conduct which Plaintiff admits was not protected. Noblis should be dismissed from this case with prejudice.

## **BACKGROUND**[1]

Noblis is a prime contractor on a Federal contract with the Department of Homeland Security (which Plaintiff refers to as the CWMD contract). (*See* Am. Compl. ¶ 13.) Noblis has a subcontract arrangement on the CWMD contract with Defendant TechINT. (*Id.*) In March 2024, Plaintiff was employed by TechINT to work on the CWMD contract, assisting DHS. (*Id.* ¶ 15.)

In May 2025, policy disputes arose within DHS on how to spend certain FEMA disaster-relief funds between DHS Secretary Kristi Noem and her Senior Advisor Corey Lewandowski, on the one hand, and Acting FEMA Director Cameron Hamilton, on the other. (*See id.* ¶¶ 38-39.) On May 8, 2025, the disputes led to the termination of Mr. Hamilton's employment as Acting FEMA Director. (*See id.*)

---

[1] In light of the standard on a motion to dismiss, this Memorandum presents the facts as alleged in the Amended Complaint. Noblis disputes the accuracy of many of those allegations.

Following that termination, Plaintiff posted on the social media site X (the site formerly known as Twitter). (*Id.* ¶ 39.) The posts expressed Plaintiff's view "that a temporary senior advisor was effectively directing DHS without formal authority, that the Acting FEMA Director had been fired for refusing to redirect federal disaster funds, and that DHS was prioritizing political directives over its mission." (*Id.*)

According to Plaintiff, senior political figures and staffers who worked for Secretary Noem were upset by Plaintiff's posting on X. (*See id.* ¶¶ 40, 42.) At least one of those political staffers "wanted Mr. Strickland fired because of the post." (*Id.* ¶ 42.)

On May 15, 2025, DHS communicated to Noblis that Plaintiff was banned from DHS property and was no longer allowed to report to work. (*See id.* ¶ 43.) Noblis communicated the ban to TechINT, which communicated it to Plaintiff. (*See id.*) Although Plaintiff attempts to suggest that the ban from DHS property may have been temporary, it is clear from his allegations that the ban was of indefinite duration. (*See, e.g., id.* ¶ 47 (ban still in place on May 19), ¶ 49 (Plaintiff was forced to return laptop in parking lot because DHS personnel still would not allow Plaintiff on DHS' property even after his termination from TechINT).)

DHS did not initially inform Noblis of the reasons for Plaintiff's ban, but the agency later stated the ban was because it was "'concerned' that he 'may have been working on things outside of [his] contract.'" (*Id.* ¶¶ 43, 46.) As best as can be discerned, Plaintiff believes the actual reason for the ban was his X post. (*See id.* ¶ 43 ("Mr. Strickland told Mr. Funicello that he knew why [he had been banned]: he had just received the call from Richardson about the X post.").)

Presumably because he could no longer perform his job with the ban in place, Plaintiff's employment with TechINT was terminated shortly thereafter.

Utilizing convoluted theories arising under Section 4712 and Virginia common law, Plaintiff attempts to hold Noblis liable for DHS' decision to ban him from its property and TechINT's subsequent decision to terminate Plaintiff's employment. As explained below, Plaintiff has not stated a claim against Noblis, and it should be dismissed from the case.

## PROCEDURAL HISTORY

On July 12, 2026, Plaintiff filed his initial Complaint (Dkt. 1) alleging, among other things, claims against Noblis under Section 4712, the False Claims Act, and Virginia common law. Noblis moved to dismiss each of the claims asserted against it on October 5, 2026. (Dkt. 15.) Among other things, Noblis demonstrated that the Section 4712 claim failed because: Noblis was not his employer; Plaintiff did not engage in any protected conduct; and Noblis did not make any actionable decision based on any of the purported disclosures. (*Id.* at 2-9.) Noblis also demonstrated that Plaintiff had failed to state a claim under the False Claims Act or Virginia common law. (*Id.* at 9-13.)

On October 26, 2026, Plaintiff filed his Amended Complaint (Dkt. 25), which dropped the False Claims Act claim but reasserted the Section 4712 and common law claims against Noblis. With regard to the Section 4712 claim, among other things, Plaintiff attempted to swap out one of his purported disclosures (the X posting) for a newly alleged "disclosure" of information he supposedly made to Noblis and TechINT regarding his treatment by government employees, of which the contractors were already aware. Regardless of these new allegations, the Amended Complaint still suffers from the same flaws as the original Complaint — Plaintiff has not pled any protected conduct and Noblis did not make any actionable decision based on any of his purported disclosures.

## ARGUMENT

### I. Plaintiff Has Not Stated a Claim Under Section 4712 Against Noblis.

To state a claim under Section 4712, a plaintiff needs to allege sufficient facts to plausibly establish: (i) the defendant was a contractor and the plaintiff's employer; (ii) the plaintiff engaged in a protected disclosure; (iii) the defendant "discharged, demoted, or otherwise discriminated against" the plaintiff; and (iv) the protected disclosure was a contributing factor in the defendant's decision to take the adverse action against the plaintiff. *See Arawole v. Master Sec. Co., LLC*, 2025 WL 947477, at *13 (D.D.C. 2025); *Angeline v. ATCS, PLLC*, 813 F. Supp. 3d 112, 121 (D.D.C. 2025). Plaintiff's Amended Complaint fails to establish these elements.

#### A. Plaintiff has not adequately pled that Noblis was his employer.

As a threshold matter, in order to plead a claim under Section 4712, a plaintiff must adequately demonstrate the defendant was his employer. *See Angeline*, 813 F. Supp. 3d at 121; *Delebreau v. Danforth*, 743 F. App'x 43, 44 (7th Cir. 2018). In this case, Plaintiff acknowledges that TechINT was his actual employer — not Noblis. (*See, e.g.,* Am. Compl. ¶¶ 11, 12.) Plaintiff attempts to establish liability against Noblis by claiming it was his "joint employer." (*See id.* ¶ 66.) To begin with, it remains an open question whether Section 4712 liability can be extended to a constructive employer the way some other employment statutes have been interpreted. *See Angeline*, 813 F. Supp. 3d at 123-124. To the extent joint employment is a viable theory under the statute, it almost certainly requires, at minimum, that the purported joint employer have exercised substantial control over the worker's performance. *See id.* at 124-125. Plaintiff fails to establish such control. It is clear from the allegations that Plaintiff's day-to-day responsibilities were determined *by DHS*. (*See, e.g.,* Am. Compl. ¶ 17.) Among other things, DHS managers assigned

Plaintiff his tasks, reviewed and approved his work product, and evaluated his performance. (*Id.*) To the extent Plaintiff has pled that there was a joint employer, it would be with DHS, not Noblis.

Furthermore, the only allegations pled against Noblis that would suggest *it* was a joint employer are that: (i) Noblis allegedly participated in the hiring panel along with DHS and TechINT, and (ii) Noblis acted as a conduit for communications between DHS, on the one hand, and TechINT and Plaintiff on the other. (*See* Am. Compl. ¶ 66.) However, neither constituting one-third of a hiring panel, nor passing on communications is the type of "control" that could establish a joint employment relationship. Consequently, Plaintiff has failed to establish Noblis was his employer under the statute even if joint employment is a viable theory.

**B. Plaintiff has not pled a protected disclosure.**

Under the statute, a disclosure is only protected if the employee discloses information he reasonably believes is evidence of:

- gross mismanagement of a Federal contract;
- gross waste of Federal funds;
- an abuse of authority relating to a Federal contract;
- a substantial and specific danger to public health or safety; or
- a violation of law, rule, or regulation related to a Federal contract.

41 U.S.C. § 4712(a)(1).

To properly plead a claim, a plaintiff must allege sufficient facts to establish that his belief that the disclosed information fits into one of the five protected categories was objectively reasonable. *See, e.g., Wonneman v. Global Grab Technologies Inc.*, 2026 WL 2884156, at *7 (D.D.C. 2026).

Courts have narrowly construed the five categories subject to protection under the statute. For example, to establish the "abuse of authority" or "violation of law" categories, a plaintiff must show a substantial "nexus" between the alleged misconduct and the specific contract itself.

*Sargent v. Pompeo*, 2020 WL 5505361, at *14 (D.D.C. 2020). Disclosures related to the alleged violation of laws that are generally applicable are not protected by Section 4712, even if they arise in the performance of the contract. *Id.* at *15. For example, in *Sargent* a report that Government employees conspired with contractor employees to sexually harass female employees on the contract was not protected under Section 4712 even though the alleged misconduct occurred on the contract, because Title VII is generally applicable to all employers. *See id.* at *14-15.

Likewise, information regarding safety is not protected absent specific factual allegations demonstrating a *substantial and specific* danger to public health or safety. *Arawole*, 2025 WL 947477 at *14. Regarding the mismanagement and waste categories, courts have held that these categories protect only disclosures regarding "egregious conduct" such that the "violations [are] flagrant enough to obviate disagreement." *Fuerst v. Hous. Auth. of City of Atlanta, Georgia*, 38 F.4th 860, 873 (11th Cir. 2022).

In addition to the substance requirements, a disclosure is also only protected if it is made to one of the bodies or persons specified in the statute. 41 U.S.C. § 4712(a)(2). The list of disclosure recipients protected by the statute is:

- member of Congress
- an inspector general
- the Government Accountability Office
- a "Federal employee responsible for contract or grant oversight or management at the relevant agency"
- a law enforcement agency
- a court, and
- a "management official or other employee of the contractor, subcontractor, grantee, subgrantee, or personal services contractor who has the responsibility to investigate, discover, or address misconduct."

*Id.*

Thus, in addition to other pleading requirements, to properly plead a claim a plaintiff must identify the specific person he allegedly made the disclosure to and plead sufficient factual allegations to support the conclusion that the role the recipient inhabited meets the statutory requirements. *See McCane v. Sch. Dist. of Pasco Cnty.*, 2020 WL 495219, at *5 (M.D. Fla. 2020).

In his Amended Complaint, Plaintiff identifies four alleged disclosures as the basis for his claim.[2] As discussed below, none of these purported disclosures is protected by the statute.

1. <u>Comments about the Hurricane Helene Report were not a protected disclosure.</u>

Plaintiff alleges that in October 2024, he was asked to comment on a report, drafted by a different subagency from the one Plaintiff worked with, regarding Hurricane Helene. (Am. Compl. ¶ 20.) Plaintiff allegedly identified "factual inaccuracies" in the draft report and "warned" that a recommendation in the report "would infringe the First Amendment rights of American citizens, exceed DHS's lawful authorities, and damage public trust in DHS." (*Id.* ¶ 21.) Plaintiff provided his concerns to his DHS managers. (*Id.* ¶ 22.)

Plaintiff's identification of alleged factual inaccuracies in a draft Government report does not fit into any of the five statutory categories of protected disclosure. Likewise, any objections to potential recommendations that Plaintiff believed could violate the First Amendment or DHS' lawful authorities do not suggest the occurrence of a "violation of law" — only a potential future violation if the recommendations were implemented. Moreover, these are not the types of violations of law protected by the statute, as they relate to general legal obligations, rather than the contract at issue. Consequently, his comments were not a protected disclosure.

[2] Notably, in contrast to the allegations in the Complaint, Plaintiff now explicitly disclaims that his X post was a protected disclosure. (Am. Compl. ¶ 62.)

2. Forwarding news reports of drone sightings was not a protected disclosure.

Plaintiff alleges that in December 2024, he informed "IAD leadership" that there had been news[3] reports of drone sightings on the East Coast. (*Id.* ¶ 23.) To begin with, the forwarding of public articles of what was a globally reported news story is not a "disclosure" of information. Second, it is not reasonable to believe that information fits into any of the five categories of protected information. To the extent Plaintiff was concerned the drones presented a safety issue, it was an amorphous, hypothetical risk, not the type of "substantial and specific danger" the statute requires. Moreover, the drones had little or no connection to Noblis' contract. Consequently, this was also not a protected disclosure.

3. The questioning of the distribution of the "Fentanyl Memorandum" was not a protected disclosure.

Plaintiff alleges that during his employment he learned about a draft memorandum to the President that would have declared fentanyl as a "Weapon of Mass Destruction." (*Id.* ¶¶ 25-26.) Plaintiff alleges that members of the political leadership at DHS "blocked [the memorandum] from moving forward." (*Id.* ¶ 26.) As best as can be discerned, what Plaintiff means by "blocked" is these political leaders made the policy decision not to transmit the memorandum to the President. Plaintiff claims that he "raised the suppression" of the memorandum in a meeting of DHS staff. (*Id.* ¶ 27.)

[3] In the Amended Complaint, Plaintiff removed the word "news" from his allegations to make them more amorphous. (*See* Dkt. 25-1 at 11 (redline of allegations).) It remains clear that even with the stricken word, Plaintiff was simply reporting information that was well known to the public. *See, e.g.,* Bruce Shipkowski, *FBI investigating reports of large drones flying in New Jersey, seeks public's help*, AP, December 4, 2024, https://apnews.com/article/fbi-drones-sightings-central-new-jersey-cd8866c9c25682167590077l6990decf; Alyce McFadden, *Unidentified Drones Light Up New Jersey's Skies, Baffling Residents*, The New York Times, December 7, 2024, https://www.nytimes.com/2024/12/07/nyregion/new-jersey-drones.html.

Plaintiff's allegations suggest he disagreed with the DHS political leadership's policy decision not to declare fentanyl a "Weapon of Mass Destruction." A disagreement over policy is not a protected disclosure of information. Further, this issue has no connection to any of the five categories of information protected by the statute.

4. Plaintiff's communication to Noblis that his DHS supervisors were requiring him to track his work activities was not a protected disclosure.

In April and May 2025, Plaintiff's DHS supervisors, Deputy Assistant Secretary Steve Griffin and Mr. Griffin's "second-in-command" Carlos Joyner began requiring Plaintiff to make a daily report of his work activities, including the meetings he participated in, the projects he worked on, and the subject of his conversations with his colleagues. (*See* Am. Compl. ¶ 31.) It appears from the Amended Complaint that this reporting requirement was imposed because Plaintiff was getting work assignments directly from Assistant Secretary David Richardson and Mr. Griffin wanted to be aware of what Plaintiff was working on. (*See id.* ¶¶ 31, 37.) Mr. Griffin and Mr. Joyner did not directly communicate the reporting requirement to Plaintiff — rather they communicated the requirement to Noblis, who in turn communicated it to TechINT, who in further turn communicated the requirement to Plaintiff. (*See id.* ¶¶ 34, 57.)

For his fourth asserted disclosure, Plaintiff states, "Mr. Strickland reported to Mr. Funicello, TechINT's owner, and to Mr. Nickerson, Noblis's CWMD program manager, that Joyner and Griffin were harassing him." (*Id.* ¶ 34.) The only example of "harassing"[4] conduct that Plaintiff allegedly communicated to Noblis and TechINT was the requirement that he report his daily work activities. (*See id.*)

[4] Although Plaintiff uses the term "harassment," as best as can be discerned, he is not using that term as a legal term of art— he does not seem to be suggesting he was subject to a hostile work environment under the discrimination statutes. Instead, he seems to be using that term to describe managerial scrutiny, which he thought was unwarranted.

But the reporting requirements constituted information the companies were *already aware* of, and Plaintiff *knew* they were already aware of this information, because Noblis and TechINT were the ones who communicated the daily reporting requirements to Plaintiff. To state the obvious, an employee cannot simply repeat information right back to a manager and then claim he has engaged in a protected "disclosure."

More importantly, even if the information had been unknown, a disclosure that one is being "harassed" is not protected by Section 4712. As noted above, in *Sargent*, a contractor's employee disclosed a conspiracy between government employees and contractor employees to sexually harass female employees on the contract. The court found that the disclosure was not protected under Section 4712 because even if it described a violation of law or abuse of authority, the abuse or violation of law was not sufficiently related to the Federal contract. "To expand the reach of § 4712 to encompass any misconduct or illegal discrimination occurring within the context of a federal contract would stretch the statute's text beyond its plain meaning." 2020 WL 5505361 at *15.

The conduct Plaintiff allegedly disclosed in the instant case has significantly less merit than that deemed insufficient in *Sargent*. Unlike in *Sargent*, Plaintiff did not report wide-scale violations of federal law as to numerous employees— he just reported that he personally was subject to (what he judged to be) unfair reporting requirements by his on-site managers. Plaintiff did not report he was subject to discrimination — just that he did not like his managers' requirements. If the disclosure in *Sargent* of actual violations of the law was not protected conduct, Plaintiff's communication was surely not either. *See, e.g., Fruge v. Bd. of Governors of Fed. Rsrv. Sys.*, 2022 WL 5166031, at *17 (D.D.C. 2022) ("the Court does not sit as a 'super-personnel department' to weigh appropriate management styles or resolve petty workplace squabbles.").

In sum, none of the four purported disclosures asserted in Plaintiff's Amended Complaint constitute protected activity under Section 4712.

**C. Plaintiff has not pled that Noblis made any actionable decision, or that any such decision is causally connected to any protected disclosure.**

Even if Plaintiff could establish Noblis was his employer and that he engaged in protected activity, the claim would *still* fail for a third reason — Plaintiff cannot demonstrate that any purported disclosure was a contributing factor to any adverse decision made by Noblis. *See Armstrong v. The Arcanum Grp., Inc.*, 897 F.3d 1283, 1287 (10th Cir. 2018).

To begin with, the statute provides that a covered employee may not be "discharged, demoted, or otherwise discriminated against." 41 U.S.C. § 4712(a)(1). Plaintiff fails to adequately allege that Noblis took any of those actions. According to the Amended Complaint, the Federal Government communicated to Noblis that Plaintiff was banned from DHS' property. (*E.g.,* Am. Compl. ¶ 3.) Noblis then relayed that message to TechINT. (*Id.*) Presumably, Plaintiff's employment was thereafter terminated since he could not perform his job without access to DHS' property. Noblis' merely relaying DHS' decision to TechINT is not an action prohibited by the statute. *See Angeline*, 813 F. Supp. 3d at 125 & FN 5.[5]

Moreover, even if Noblis had engaged in an independent decision to remove Plaintiff from the contract, Plaintiff has not pled that such a decision was made *because of* any protected disclosure undertaken by Plaintiff.

[5] Although Plaintiff pleads that Noblis made a decision to remove him from the contract, that allegation is pled on information and belief (Am. Compl. ¶ 56), and is not accompanied by the required surrounding facts that plausibly support the inference that Noblis made an independent decision. *See Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021).

It is clear that Noblis was unaware of the purported disclosures related to the Hurricane Helene report, the drone report, or the fentanyl memorandum. Obviously Plaintiff cannot establish a causal connection between events Noblis was unaware of, and any decision it made. *See, e.g.*, *United States ex rel. Toledo v. HCA Holdings, Inc.*, 2023 WL 2823899, at *2 (5th Cir. 2023); *Armstrong*, 897 F.3d 1283, 1287 (10th Cir. 2018).

Regarding the only disclosure made to Noblis — that Plaintiff was subjected to unfair treatment by Joyner — there are absolutely no allegations in the Amended Complaint that would suggest that disclosure played any role in any removal decision made by Noblis.

In order to plausibly establish causal connection, Plaintiff would have had to plead *significant facts* to overcome the obvious explanation that any removal decision by Noblis was made because Plaintiff had been banned from the Government's property and his worksite. Instead of pleading significant allegations to overcome that obvious explanation, Plaintiff pled *no facts* that would suggest Noblis acted because of Plaintiff's alleged "disclosure" of his daily reporting requirements (of which Noblis was already aware). Consequently, Plaintiff's claim must be dismissed.

**D. Noblis is not vicariously liable for the conduct of the Federal Government.**

It is clear from the Amended Complaint that Plaintiff believes that DHS political staff recommended Plaintiff's ban from DHS property in retaliation for Plaintiff's post on X. (*See* Am. Compl. ¶ 43.) But even if that allegation is accepted as true, it does not present a basis for liability against *Noblis*.

Noblis is not vicariously liable for the conduct of the Federal Government. *See Armstrong*, 897 F.3d at 1291. Plaintiff's suggestion to the contrary is an attempt to flip the cat's-paw theory on its head. That does not work. The Federal Government is not an agent of Noblis. *See id.*

Consequently, Plaintiff cannot impute any retaliatory animus DHS staff might have had against Plaintiff to Noblis. *Id.*

In sum, Plaintiff has not established <u>any</u> of the elements necessary to state a claim against Noblis for violation of Section 4712. Count I should be dismissed against Noblis.

## II. Plaintiff Has Failed to State a Claim for Tortious Interference Against Noblis.

In Count III, Plaintiff asserts a claim against Noblis for tortious interference with his employment relationship with TechINT under Virginia law. Among other things, to state a claim for tortious interference with an at-will relationship, a plaintiff must allege sufficient facts to show the defendant acted with improper methods. *Lewis-Gale Med. Ctr., LLC v. Alldredge*, 282 Va. 141, 149 (2011). Even accepting Plaintiff's allegation that Noblis exercised a contractual right to remove Plaintiff— the exercise of a lawful contractual right, by definition, is not an improper method. *Id.* at 152; *Kruml v. Booz Allen Hamilton, Inc.*, 2025 WL 36977, at *8 (Va. Ct. App. 2025).

The case of *Kruml* is remarkably instructive. There the plaintiff was an employee of a subcontractor on a Federal contract with the Office of the Director of National Intelligence ("ODNI"). *Id.* at *1. The plaintiff was subject to harassment by certain ODNI employees, which he reported to the prime contractor, Booz Allen Hamilton. *Id.* In retaliation for the report, the ODNI employees terminated the plaintiff's access to ODNI's secure sites. *Id.* Following that decision by ODNI, Booz Allen exercised its power under its subcontract agreement to have the plaintiff removed from the ODNI contract. *Id.* Kruml sued Booz Allen for tortious interference. *Id.* at *2. The trial court dismissed the case, and the Virginia Court of Appeals affirmed because

Booz Allen's removal of the plaintiff from the contract was a lawful exercise of its contractual rights, and therefore there was no improper method. *Id.* at *6-7.

The instant case presents nearly the same scenario as was present in *Kruml*. Noblis is alleged to have possessed the contractual right to remove Plaintiff from the Federal contract, and Plaintiff claims injury as the result of Noblis' alleged exercise of that right. The only unlawful conduct alleged against Noblis is the purported violation of Section 4712. For the reasons set out above, Noblis did not violate that statute or act unlawfully. Consequently, Plaintiff is incapable of demonstrating that Noblis used improper methods, and his claim for tortious interference must be dismissed.

**III. Plaintiff's Claims Against Noblis Should Be Dismissed With Prejudice.**

Plaintiff's Amended Complaint was prepared in direct response to Noblis' and TechINT's previously filed motions to dismiss to the original Complaint. In crafting his pleading, Plaintiff presumably asserted every fact of which he was aware that might address the flaws pointed out by Defendants in their prior motions. Yet, still, Plaintiff's allegations remain woefully short of stating a claim against Noblis. That is because the underlying reality does not support a legal cause of action against Noblis.

Consequently, the claims against Noblis should be dismissed with prejudice and Plaintiff should be denied any further leave to amend.

## CONCLUSION

For the reasons stated above, Noblis' Motion to Dismiss should be granted.

Dated: November 23, 2026

Respectfully submitted,

/s/ Micah E. Ticatch

Micah E. Ticatch, DC Bar No. 1005398
Edward Lee Isler, DC Bar No. 417076
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Noblis, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of November 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will serve a copy on all counsel of record.

/s/ Micah E. Ticatch
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
mticatch@islerdare.com

*Counsel for Noblis, Inc.*