**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MATTHEW STRICKLAND,<br><br>Plaintiff,<br><br>v.<br><br>TECHINT SOLUTIONS GROUP, LLC<br><br>and<br><br>NOBLIS, Inc., *et al.*,<br><br>Defendants. | Civil Action No. 26-02444 (EGS) |

**DEFENDANT TECHINT SOLUTIONS GROUP, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DIMISS**

# TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 2

I. Relevant Factual Allegations ........ 2

- A. Plaintiff's Assignment to the CWMD Contract ........ 2
- B. Plaintiff's Alleged "Protected Disclosures" ........ 3
- C. Plaintiff's Removal from the CWMD Contract ........ 5

II. Procedural History ........ 5

LEGAL STANDARDS ........ 6

ARGUMENT ........ 7

I. Plaintiff Fails to State a Claim for Whistleblower Retaliation Under 41 U.S.C. § 4712 as to TechINT (Count I) ........ 8

- A. Plaintiff's alleged disclosures do not constitute protected activity under § 4712 ........ 8
- B. The Amended Complaint does not plausibly allege that any protected disclosure contributed to a reprisal by TechINT. ........ 10
- C. The Amended Complaint fails to allege exhaustion of the theory Plaintiff now pleads. ........ 11

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Fort Myer Constr. Co.*,
No. 1:25-cv-1949 (TNM), 2026 U.S. Dist. LEXIS 95481 (D.D.C. Apr. 30, 2026) ....6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6, 7, 10

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015)....7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....6

*Bello v. Howard Univ.*,
898 F. Supp. 2d 213 (D.D.C. 2012)....7

*EEOC v. St. Francis Xavier Parochial Sch.*,
117 F.3d 621 (D.C. Cir. 1997)....7

*Jones v. Horne*,
634 F.3d 588 (D.C. Cir. 2011)....7

*Kaempe v. Myers*,
367 F.3d 958 (D.C. Cir. 2004)....7

*Park v. Howard Univ.*,
71 F.3d 904 (D.C. Cir. 1995)....12

*Perez v. Vance Unif. Prot. Servs.*,
2008 U.S. Dist. LEXIS 58587 (E.D. Va. July 30, 2008)....11

*Singletary v. Howard Univ.*,
939 F.3d 287 (D.C. Cir. 2019)....10

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)....7

*Taylor v. FDIC*,
132 F.3d 753 (D.C. Cir. 1997)....7

*Uru v. Rubio*,
No. 25-02524 (PLF), 2026 U.S. Dist. LEXIS 39122 (D.D.C. Feb. 25, 2026) ....7

**Statutes**

31 U.S.C. § 3730(h) ....................5

41 U.S.C. § 4712 .................... *passim*

False Claims Act ....................1, 6

Federal Tort Claims Act....................6

**Other Authorities**

Am. Compl....................5

Rule 8 ....................6

Rule 12(b)(6)....................6

Rule 15(a)(1)(B)....................6

Defendant TechINT Solutions Group, LLC ("TechINT"), by and through undersigned counsel, respectfully moves to dismiss Plaintiff Matthew Strickland's ("Plaintiff's") First Amended Complaint ("Am. Compl.") (ECF No. 25) in its entirety as to Defendant TechINT pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. As explained more fully below, the Amended Complaint fails to state a claim of whistleblower reprisal under 41 U.S.C. § 4712, the only claim Plaintiff now asserts against TechINT.

## INTRODUCTION

Plaintiff is a former analyst for TechINT, a subcontractor to Noblis, Inc. ("Noblis") for the Department of Homeland Security ("DHS"). During his employment with TechINT, Plaintiff supported DHS's Countering Weapons of Mass Destruction Office ("CWMD") in a contractor capacity until DHS barred him from its property on May 15, 2025, and TechINT informed him on May 17, 2025, that his employment had ended. Am. Compl. (ECF No. 25) ¶¶ 43, 46. In his original Complaint ("Compl.") (ECF No. 1), Plaintiff alleged that DHS political leadership "ordered" his removal from the CWMD contract, and that the contractors merely executed that directive. Compl. ¶¶ 3, 36. The Amended Complaint abandons that account. It drops the False Claims Act and standalone declaratory relief claims, disclaims the social media post that Plaintiff previously called the protected disclosure that "directly triggered" his removal, and now recasts the contractors as the decisionmakers. Am. Compl. (ECF No. 25) ¶¶ 4, 56, 62; Compl. (ECF No. 1) ¶ 2.

Repleading does not cure the core defect. By Plaintiff's own account, the demand that led to his removal came from DHS political leaders, who were angered by a post that Plaintiff concedes is not a protected disclosure, and the contractors learned only that DHS had barred him, without explanation, from his worksite. Am. Compl. (ECF No. 25) ¶¶ 3, 42-43, 62. Plaintiff therefore cannot satisfy his burden to state a claim against TechINT for several reasons. *First*, the

alleged disclosures are not protected activity under § 4712: the Hurricane Helene, drone, and fentanyl matters are policy disagreements with DHS leadership, and the newly pleaded complaints to TechINT's owner about Plaintiff's supervisors are personal workplace grievances, not disclosures of abuse of authority relating to a federal contract. *Second*, the Amended Complaint pleads no nonconclusory facts showing that any protected disclosure was a contributing factor in TechINT's decision. Instead, Plaintiff relies on a series of guesses, pleaded only "on information and belief," that his disclosures somehow influenced DHS, that DHS then influenced Noblis, and that Noblis in turn influenced TechINT. Nowhere does he allege facts showing that anyone at TechINT knew of his disclosures or acted to retaliate against him for them. *Third*, Plaintiff did not first present this claim to the Inspector General, as § 4712 requires. The disclosures described in his Inspector General complaint are different from the ones on which he now bases his lawsuit. Accordingly, TechINT respectfully requests that the Court dismiss Count I, the only count asserted against it, as to Defendant TechINT.

## BACKGROUND

### I. Relevant Factual Allegations[1]

#### A. Plaintiff's Assignment to the CWMD Contract

At all relevant times, TechINT was a subcontractor to Noblis, the prime contractor on DHS's CWMD contract. Am. Compl. (ECF No. 25) ¶¶ 12-13. Plaintiff, a former TechINT employee, began supporting CWMD's Information and Analysis Directorate ("IAD") in a contractor capacity in March 2024 and performed his duties on DHS's St. Elizabeths Campus. *Id.* ¶ 15. Throughout his CWMD tenure, Plaintiff held a Top Secret/Sensitive Compartmented Information ("TS/SCI") clearance. *Id.* ¶ 11. Plaintiff's CWMD portfolio included fentanyl-as-

---

[1] Defendant TechINT accepts the factual allegations in Plaintiff's Amended Complaint as true only for purposes of this Motion to Dismiss.

WMD policy, drone-borne chemical, biological, radiological, and nuclear ("CBRN") threats, and interagency intelligence sharing and cross-component coordination. *Id.* ¶ 18.

As an analyst for CWMD, Plaintiff's work was directed and overseen by DHS managers, who assigned his tasks, reviewed his work product, and evaluated his performance. *Id.* ¶ 17. Those managers included Deputy Assistant Secretary Steve Griffin (the head of IAD), Carlos Joyner (Griffin's second-in-command), and Plaintiff's first-line supervisor, Desiree Dawson, all DHS employees. *Id.* Assistant Secretary David Richardson, the head of CWMD, separately assigned Plaintiff work. *Id.* ¶ 19.

### B. Plaintiff's Alleged "Protected Disclosures"

The Amended Complaint identifies four categories of alleged protected disclosures, plus a statement Plaintiff made to Griffin on the morning of his removal. *See id.* ¶¶ 20-37, 67. *First*, Plaintiff reviewed a draft product prepared by DHS's Office of Intelligence and Analysis ("I&A") that carried an implied recommendation to monitor victims of Hurricane Helene for "conspiracy theories" and "misinformation" ("Hurricane Helene Report"). *Id.* ¶¶ 20-21. He emailed his objections to DHS managers in IAD, the draft was finalized without his corrections, and he claims he believed these objections evidenced gross mismanagement, abuse of authority, and a violation of law relating to a federal contract. *Id.* ¶ 22. Absent from the Amended Complaint is any allegation that Plaintiff raised these concerns with TechINT. *See id.*

*Second*, beginning in December 2024, Plaintiff alerted IAD leadership, including by email, to reports of unexplained drone sightings and to intelligence reporting that drones could be adapted to deliver CBRN payloads. *Id.* ¶ 23. His DHS supervisors dismissed the reporting as "not our lane." *Id.* ¶ 24.

*Third*, Plaintiff alleges that, on information and belief, DHS political leadership blocked an interagency memorandum recommending that illicit fentanyl be designated a Weapon of Mass Destruction, and that he raised the issue in a CWMD meeting, including with Joyner. *Id.* ¶¶ 25-27. The Amended Complaint does not allege that Plaintiff raised either matter (the reports of unexplained drone sightings or that DHS political leadership blocked an interagency memorandum) with TechINT. *See id.* ¶¶ 23-27.

*Next*, the Amended Complaint pleads a new category of disclosure: Plaintiff's complaints to TechINT owner Skip Funicello and Noblis program manager Ed Nickerson that Joyner and Griffin were "harassing him." *Id.* ¶ 34. The alleged harassment consisted principally of a reporting requirement, culminating in a daily report of his meetings and conversations, that Joyner imposed with Griffin's support. *Id.* ¶¶ 31, 34. Plaintiff alleges that he believed this conduct was an abuse of the DHS managers' authority over his contract work. *Id.* ¶¶ 34-35. Funicello agreed that the daily-reporting demand was harassment and advised Plaintiff to file a hostile-workplace grievance. *Id.* ¶ 34. Plaintiff also concedes that the reporting regime was imposed through ordinary supervisory channels and "actuated at least in part by a purpose to oversee IAD work." *Id.* ¶ 32. Plaintiff also relies on his statement to Griffin on the morning of May 15, 2025, when he told Griffin he was moving to a new CWMD Strategy team position, that the reporting requirements and other harassment were "egregious," and that Funicello had suggested a hostile-workplace grievance. *Id.* ¶¶ 37, 67. Griffin acknowledged Plaintiff's right to file a grievance and agreed the move was appropriate. *Id.* ¶ 37.

*Finally*, in the days after the May 8, 2025, removal of Acting FEMA Director Cameron Hamilton, Plaintiff posted on X in support of Hamilton. *Id.* ¶¶ 38-39. Plaintiff previously alleged that this post was a protected disclosure and the event that "direct[ly] trigger[ed]" his removal.

Compl. (ECF No. 1) ¶¶ 2, 24-27. The Amended Complaint now expressly "does not allege that those X posts were a protected disclosure under § 4712." Am. Compl. (ECF No. 25) ¶ 62.

Other than the complaints about his supervisors' treatment of him, Plaintiff does not allege that he made any of his alleged disclosures to TechINT. He alleges only, in conclusory fashion, that Funicello "knew of the disclosures described in Sections B through D" and "understood that those disclosures were a reason for the reporting regime," without any factual support, including identifying when, how, or from whom Funicello learned of them. *Id.* ¶ 5

**C. Plaintiff's Removal from the CWMD Contract**

On the evening of May 15, 2025, Assistant Secretary Richardson called Plaintiff and told him that "one of the four horsemen," a nickname for political staffers working for Secretary Noem, had called and wanted Plaintiff fired because of his X post supporting Hamilton. *Id.* ¶ 42. About thirty minutes later, Funicello called Plaintiff to relay that Noblis had just informed TechINT that DHS would not allow Plaintiff on DHS property the next day. *Id.* ¶ 43. Funicello said that neither he nor Noblis had been given a reason, that he did not know whether Plaintiff had been fired or barred for a day, and told Plaintiff to take a day of leave while he tried to find out what was happening. *Id.* Plaintiff told Funicello he knew why: he had just received Richardson's call about the X post. *Id.* According to Plaintiff, the demand passed from political staff to Joyner, who "ran with it and called the company," and, on information and belief, Joyner did so directly or through the Contracting Officer's Representative. *Id.* ¶¶ 51, 55.

**II. <u>Procedural History</u>**

On July 12, 2026, Plaintiff filed his original Complaint asserting claims against TechINT, Noblis, and the United States of America, including claims against TechINT under 41 U.S.C. § 4712 and 31 U.S.C. § 3730(h) and for declaratory and injunctive relief. Compl. (ECF No. 1). On

October 26, 2026, Plaintiff filed the Amended Complaint as a matter of course under Rule 15(a)(1)(B). Am. Compl. (ECF No. 25) at 1. Plaintiff alleges that he submitted a whistleblower reprisal complaint under § 4712 to DHS's Office of Inspector General ("OIG") on September 3, 2025, and that more than 210 days elapsed without an order. *Id.* ¶¶ 62-63.

The Amended Complaint asserts Count I for whistleblower reprisal under 41 U.S.C. § 4712 against TechINT and Noblis; Count II for intentional infliction of emotional distress under the Federal Tort Claims Act against the United States; and Count III for tortious interference with contractual and business relations under Virginia law against Noblis. *Id.* ¶¶ 65-91. Plaintiff no longer asserts a False Claims Act retaliation claim or a standalone claim for declaratory and injunctive relief. Count I is the only claim asserted against TechINT. This Motion addresses only Count I as asserted against TechINT. TechINT takes no position on Plaintiff's claims against Noblis or the United States.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Adams v. Fort Myer Constr. Co.*, No. 1:25-cv-1949 (TNM), 2026 U.S. Dist. LEXIS 95481, at *4-5 (D.D.C. Apr. 30, 2026). While Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," *Twombly*, 550 U.S. at 555 (cleaned up), dismissal is warranted where the complaint fails to allege facts that plausibly give rise to an entitlement to relief, *id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plausibility standard "is not akin to a 'probability requirement,'" but it demands more than a mere possibility of misconduct. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

In evaluating a motion to dismiss, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but "need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." *Uru v. Rubio*, No. 25-02524 (PLF), 2026 U.S. Dist. LEXIS 39122, at *7 (D.D.C. Feb. 25, 2026). A plaintiff must therefore plead more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In the employment-discrimination context, a plaintiff need not plead a prima facie case to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Even so, the complaint must allege sufficient nonconclusory facts to plausibly support each essential element of the asserted claim. *Jones v. Horne*, 634 F.3d 588, 597 (D.C. Cir. 2011); *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997). Dismissal remains appropriate where the pleaded facts, even taken as true, fail to establish a required element of the cause of action. *See Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 220 (D.D.C. 2012).

When resolving a motion to dismiss, the Court may consider not only the allegations in the complaint but also documents attached to or incorporated by reference into the complaint, as well as matters subject to judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). The Court may likewise consider documents expressly referenced in the complaint and integral to the plaintiff's claims without converting the motion into one for summary judgment. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133-34 (D.C. Cir. 2015); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

## ARGUMENT

Plaintiff's claim against TechINT fails for the same fundamental reason it failed before: by Plaintiff's own account, the demand that ended his assignment originated with DHS political staff

reacting to an X post that Plaintiff now concedes is not protected, and it reached TechINT through Noblis as an unexplained DHS bar on his access to his only worksite. Am. Compl. (ECF No. 25) ¶¶ 3, 42-43, 62. Relabeling the contractors as the decisionmakers does not change those facts. As shown below, none of Plaintiff's alleged disclosures is protected activity under § 4712, the Amended Complaint pleads no nonconclusory facts that any protected disclosure contributed to TechINT's decision, and Plaintiff did not exhaust the theory he now pleads. The Court should therefore dismiss Count I as to TechINT.

## I. Plaintiff Fails to State a Claim for Whistleblower Retaliation Under 41 U.S.C. § 4712 as to TechINT (Count I).

### A. Plaintiff's alleged disclosures do not constitute protected activity under § 4712.

Section 4712 prohibits reprisal against employees of federal contractors and subcontractors who disclose evidence of waste, fraud, abuse, or dangers to public health or safety. A disclosure is protected only if the employee reasonably believes it evidences: (1) gross mismanagement of a federal contract or grant, (2) gross waste of federal funds, (3) abuse of authority related to a federal contract or grant, (4) substantial and specific danger to public health or safety, or (5) violation of law, rule, or regulation related to a federal contract or grant. The employee must also direct the disclosure to a specified recipient, such as a member of Congress, an Inspector General, the Government Accountability Office ("GAO"), the Department of Justice or other law enforcement, a court, or a federal employee responsible for contract or grant oversight. Conclusory invocation of these statutory categories does not suffice.

The Hurricane Helene, drone, and fentanyl disclosures are policy disagreements with DHS leadership with no nexus to a federal contract. Plaintiff disagreed with a recommendation in an I&A product, with DHS managers' view that drone threats were "not our lane," and with DHS political leadership's alleged decision not to advance a fentanyl-as-WMD designation. Am.

Compl. (ECF No. 25) ¶¶ 21-27. He identifies no contract term, deliverable, or contract performance that any of these decisions affected, and he does not explain how disagreements over agency priorities and policy constitute gross mismanagement of, or abuse of authority relating to, a federal contract. Attaching statutory labels to policy disputes does not plead protected activity under § 4712.

The newly pleaded complaints to Funicello and Nickerson, and the related statement to Griffin, fare no better. These were complaints that Plaintiff's DHS supervisors were "harassing him," chiefly through reporting requirements, and that he intended to file a hostile-workplace grievance. *Id.* ¶¶ 34, 37. A personal grievance about one's own supervision is not a disclosure of "gross mismanagement of a Federal contract" or "an abuse of authority relating to a Federal contract." Plaintiff concedes that the reporting requirements were imposed through ordinary supervisory channels and were "actuated at least in part by a purpose to oversee IAD work." *Id.* ¶ 32. Recasting a complaint about workplace treatment as a disclosure of contract-related abuse of authority would convert every employee grievance on a federal contract into protected whistleblowing. Indeed, the Amended Complaint itself labels this conduct harassment of Plaintiff personally, not misconduct affecting contract performance. *Id.* ¶¶ 34, 59.

Two further points narrow the claim. *First*, the Hurricane Helene disclosure concerned an intelligence product of I&A, an element of the intelligence community, and arose from Plaintiff's review of that product; it is excluded by § 4712(f) as a disclosure relating to an activity of an element of the intelligence community. *Id.* ¶¶ 16, 20. *Second*, Plaintiff has abandoned the X post as a protected disclosure, *id.* ¶ 62, so Count I cannot rest on it.

### B. The Amended Complaint does not plausibly allege that any protected disclosure contributed to a reprisal by TechINT.

Even if the disclosures were protected, Count I fails because the Amended Complaint pleads no nonconclusory facts showing that a protected disclosure was a contributing factor in TechINT's decision. Plaintiff's own allegations identify a different cause. Richardson told him that political staff wanted him fired because of the X post, Plaintiff told Funicello the same thing that evening, and Plaintiff concedes the post is not a protected disclosure. Am. Compl. (ECF No. 25) ¶¶ 42-43, 62. The Amended Complaint's answer, that the political reaction "supplied the occasion" but did not "displace the disclosures as a contributing factor," *id.* ¶ 71, is a legal conclusion, not a fact.

As to TechINT's knowledge, the only disclosures Plaintiff alleges he made to TechINT are his complaints about his supervisors, which are not protected for the reasons stated above. *Id.* ¶ 34. Plaintiff alleges in a single sentence that Funicello also "knew of the disclosures described in Sections B through D," *id.* ¶ 58, but he pleads no communication, date, or source of that knowledge. That bare assertion is not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678; *Singletary v. Howard Univ.*, 939 F.3d 287, 300 (D.C. Cir. 2019) ("Common sense teaches that an employer cannot retaliate against conduct of which it was unaware.").

Plaintiff's fallback theory, that TechINT acted on a demand Joyner carried "to the company" and thereby let Joyner's hostility infect its decision, *id.* ¶¶ 55, 71, does not supply the missing link. The theory rests on Richardson's secondhand account of what a colleague told him, and on information and belief that Joyner acted directly or through the Contracting Officer's Representative. *Id.* ¶¶ 51, 55. And Plaintiff alleges that what reached TechINT was not any communication from Joyner but a message from Noblis that DHS would not permit Plaintiff on its property, with no reason given. *Id.* ¶¶ 43, 53. Plaintiff pleads no facts showing that TechINT knew

of any role Joyner played. Nor does he allege any retaliatory motive by TechINT. To the contrary, he alleges that Funicello declined to remove him over earlier DHS complaints, concluded that the X post did not violate his contract, advised him to file a grievance, and apologized for how he was treated. *Id.* ¶¶ 29-30, 34, 44, 49. *Cf. Perez v. Vance Unif. Prot. Servs.*, 2008 U.S. Dist. LEXIS 58587, at *8-9 (E.D. Va. July 30, 2008) (examining whether employer had independent retaliatory motive or merely acted at the direction of the government client).

Finally, the Amended Complaint's recharacterization of the contractors as decisionmakers cannot be squared with its own allegations about TechINT. Plaintiff alleges that DHS barred him from the property where he performed all of his work, that DHS would not even let him return his equipment, and that, on information and belief, Noblis directed or approved his permanent removal from the contract and TechINT "could not keep Mr. Strickland on the contract over Noblis's direction." Am. Compl. (ECF No. 25) ¶¶ 15, 49, 57. Those allegations describe a subcontractor that lost its employee's only assignment because of decisions by others, which is the same account Plaintiff pleaded in his original Complaint. Compl. (ECF No. 1) ¶¶ 3, 36. They do not plausibly show that TechINT itself took reprisal for protected disclosures. The Court should thus dismiss Count I as to TechINT on this ground alone.

### C. The Amended Complaint fails to allege exhaustion of the theory Plaintiff now pleads.

Plaintiff now alleges that his September 3, 2025, OIG complaint identified TechINT and Noblis. Am. Compl. (ECF No. 25) ¶ 62. But he also alleges what that complaint presented as protected disclosures: the Hurricane Helene product, the drone threats, the fentanyl issue, and his X posts concerning Hamilton's removal. *Id.* The OIG complaint described the daily-log requirements and other hostility as retaliatory conduct and noted that TechINT had advised Plaintiff to file a hostile-work-environment complaint. *Id.* ¶¶ 62-63. It did not, according to the

Amended Complaint, present Plaintiff's complaints to Funicello and Nickerson, or his statement to Griffin, as protected disclosures. And the only disclosure the OIG complaint presented that could plausibly connect to the events of May 15, the X posts, is one Plaintiff has now abandoned. *Id.* ¶ 62.

Count I cannot proceed on matters outside that complaint. *Cf. Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (the court should dismiss claims outside the scope of the administrative charge). This scope limitation gives the agency the opportunity to investigate and resolve the complaint and gives the accused contractor notice of the claim against it. The Inspector General was asked to investigate a reprisal for an X post and for policy disagreements with DHS leadership, not a reprisal by TechINT for complaints made to TechINT's own owner. To the extent Count I rests on the disclosures alleged in paragraphs 34, 35, and 37 of the Amended Complaint, it is unexhausted and should be dismissed as to TechINT.

* * *

## CONCLUSION

Plaintiff's own allegations establish that the demand that ended his assignment came from DHS political staff reacting to an unprotected X post, and that it reached TechINT as an unexplained DHS property bar conveyed by Noblis. Count I fails as to TechINT because Plaintiff's disclosures are not protected under 41 U.S.C. § 4712, the Amended Complaint pleads no nonconclusory facts showing that any protected disclosure contributed to TechINT's decision, and Plaintiff did not exhaust the theory he now pleads. TechINT therefore respectfully requests that the Court dismiss Count I of the Amended Complaint as to Defendant TechINT.

Date: November 23, 2026

Respectfully submitted,

*/s/ Dedra S. Curteman*
Dedra S. Curteman (D.C. Bar No. 90021492)
Andrea M. Belanger (D.C. Bar No. 1780069)
JACKSON LEWIS, P.C.
11790 Sunrise Valley Drive, Suite 400
Reston, VA 20191
Tel: (703) 483-8333
Fax: (703) 483-8301
E-mail: Dedra.Curteman@jacksonlewis.com
Annie.Belanger@jacksonlewis.com

*Counsel for Defendant TechINT*